811 So.2d 751 (2002)
John W. BRINK, Appellant,
v.
BANK OF AMERICA, N.A., as successor by merger to NationsBank Corporation, as successor by merger to Barnett Banks, Inc., Appellee.
No. 1D01-0332.
District Court of Appeal of Florida, First District.
March 1, 2002.
Rehearing Denied April 4, 2002.
*752 Richard R. Thames, Stutsman & Thames, P.A., Jacksonville, for Appellant.
Robert T. Kofman and Annette Torres, Stearns, Weaver, Miller, Weissler, Alhadeff, and Sitterson, P.A., Miami, for Appellee.
POLSTON, J.
Appellant John W. Brink challenges the trial court's final judgment awarding him $1,331,103 for termination payments and benefits pursuant to his July 1, 1997 Employment Agreement with Barnett Banks, Inc. Brink, Chairman & CEO of Barnett Credit Corporation with particular expertise in manufactured housing finance, had an Employment Agreement that provided golden parachute termination payments and benefits in the event that there was a defined change of control of Barnett. Subsequently, Barnett merged with Nations-Bank Corporation, which later merged with BankAmerica, resulting in the entity Bank of America, N.A.
Brink contends that, pursuant to Section 7 of his Barnett Employment Agreement, he is entitled to additional benefits provided in his March 18, 1998 Special Incentive Agreement with NationsBank Corporation. Alternatively, Brink argues that he is entitled to additional damages under the "commercial frustration doctrine" as a result of the bank's unexpected sale of NationsCredit Manufactured Housing Corporation's business during the term of the Special Incentive Agreement. Brink also argues that there was a disputed issue of fact regarding the applicable "gross-up" figure calculated pursuant to paragraph 8 of the Employment Agreement.[1]
We agree with the trial court's rulings, and therefore affirm.

Special Incentive Agreement
The trial court properly ruled that the Employment Agreement and the Special Incentive Agreement are separate contracts. The Special Incentive Agreement specifically provided that Brink would not qualify for incentive benefits unless he was employed as of December 31, 2000, and that if employment was terminated for any reason whatsoever (either by NationsBank or the participant) prior to the receipt of an incentive payment, Brink would not be eligible to receive an award. In September 1998, NationsBank merged with BankAmerica, resulting in the entity Bank of America. Bank of America sold its manufactured housing financing business and discharged Brink on or about December 7, 1998.
Because Brink was not employed as of December 31, 2000, he was not a participant in the Special Incentive Program by its express terms and is not entitled to additional benefits. To the extent that paragraph 7(l) of the Employment Agreement may be read to require additional payments arising from the Special Incentive Program because Brink ceased to be an employee, it expressly contradicts the specific language in the Special Incentive Agreement. Because the language in the Special Incentive Agreement is later in time, it controls over the Employment Agreement. See 17A C.J.S. Contracts § 315 at 338 (1999)("[I]f there is a plain repugnancy between the provisions of an original contract and those of a supplemental one between the same parties and relating to the same subject matter, the earlier contract must yield to the later as far as the repugnancy extends.").
*753 We agree with the trial court that Brink's termination due to the merger of the bank and sale of the manufactured housing financing business was foreseeable. Accordingly, Brink's alternative argument of commercial frustration is without merit. See Hilton Oil Transport v. Oil Transport Co., S.A., 659 So.2d 1141, 1147 (Fla. 3d DCA 1995)("[T]he doctrine of commercial frustration is predicated upon the premise of giving relief in a situation where the parties could not provide themselves by the terms of the contract against the happening of subsequent events, but it does not apply where the intervening event was reasonably foreseeable and could and should have been controlled by provisions of such contract.").

Gross-Up Factor
Paragraph 8 of the Employment Agreement requires that Brink's termination payments be "grossed-up" so that he receives an additional amount "equal to all Withholding Taxes [defined as all applicable federal, state and local taxes] payable by or on behalf of the Executive in respect of the Termination Payments, including any Withholding Taxes as may be due in respect of such additional amounts to be paid pursuant to this sentence as will result in the Executive actually retaining an amount equal to the Net Termination Payments."
At the summary judgment hearing, the bank presented an affidavit from a Price-waterhouseCoopers accountant, who provided a precise mathematical calculation pursuant to paragraph 8 of the Employment Agreement showing how the 73.124% gross-up factor used by the bank was derived. The bank also filed the deposition transcript of Steven Carpenter, Senior Vice President of Compensation. Mr. Carpenter testified that Brink was offered a settlement using an enhanced gross-up factor of 84.48% (rejected by Brink), but his contractual gross-up factor was contained in his worksheet at approximately 73%.
Brink did not present any contrary evidence at anytime showing how he would calculate the gross-up factor. Instead, he relied on an expert's affidavit that merely indicated the dollar amounts that Brink was entitled to in the event that either a grossup factor of 73.124% or 84.48% was used.
After the trial court ruled in the bank's favor, Brink filed a motion for rehearing based on two additional documents obtained from nonparties, and argued that these supported use of a gross-up factor of 84.48%, thereby creating a disputed issue of fact precluding summary judgment. The first document is a worksheet prepared by the bank for another employee. Because the worksheet relates to a different employee, it does not create a disputed issue of fact. The second document purports to be an exhibit to the merger agreement between Barnett and NationsBank in which the two banks stated their respective positions regarding the payment of severance benefits to departing employees. Brink stated in his motion for rehearing that "both NationsBank and Barnett calculated severance benefits utilizing a .8448 gross-up factor." However, the .8448 gross-up factor does not appear on the attached exhibit and does not otherwise purport to compute the amount pursuant to paragraph 8 of the Employment Agreement. The trial court properly denied Brink's motion for rehearing.

Conclusion
Brink is not entitled to additional benefits as provided in the Special Incentive Agreement, and the trial court did not err by determining that there were no disputed issues of fact relating to the gross-up *754 factor under paragraph 8 of the Employment Agreement.
AFFIRMED.
BENTON, J., concurs; ERVIN, J., concurs and dissents with opinion.
ERVIN, J., concurring and dissenting.
I concur with the majority in its disposition of the first issue. I cannot agree, however, with its conclusion that no genuine issues of material fact remain for resolution as to the second, regarding the appropriate "gross-up" factor for calculating the severance benefits available to appellant, John W. Brink. In my judgment, the most compelling evidence demanding reversal of the partial summary judgment was that which appellant presented as newly discovered in his motion for rehearing of the summary judgment. The evidence consisted of two exhibits, one a worksheet prepared by Barnett Banks calculating the severance benefits paid to a former employee using the 84.48 percent factor, and the other, made at the time of the Barnett/Nations Bank merger, was an analysis of the global costs associated with the merger, including severance benefits payable to departing employees, indicating the greater factor. The trial court, in denying the motion, made no ruling as to appellant's lack of diligence in presenting the additional evidence after the hearing. In fact, the court appears to have denied the motion on its merits, in that it said only, "I'll adhere to my earlier ruling finding that's an individualized factor and deny the motion for reconsideration."
In its written order granting in part appellee Bank of America's motion for summary judgment, the court discussed only the deposition testimony of Steven Carpenter, the Bank's Vice President of Compensation, who gave supporting testimony as to the lower figure, and Michael Rosenbaum, an accountant on behalf of the Bank, who provided a mathematical calculation supporting the 73.124 figure. Brink's evidence in opposition consisted of a worksheet the Bank presented to him at the time of his termination, which reflected a gross-up figure of 84.48 percent, an internal analysis of the Bank's potential liability to Brinks, prepared a year before his termination, which also reflected benefits based upon the higher calculation, and the affidavit of Brink's expert, C. Donald Wiggins, who submitted two different figures based on the upper and lower factors. Wiggins, however, did not offer an opinion regarding which gross-up factor should be used. The court disregarded this evidence, however, apparently relying primarily on Carpenter's testimony, stating that the higher rate applied only in the event an employee accepted the severance package offered to him or her without litigating. This was the only evidence regarding the Bank's reward policy, and there was nothing in the documents indicating that a terminated employee was permitted the greater gross-up calculation only upon settling.
If this was indeed the Bank's policy, as the court apparently found and appellee argued, the policy clearly favored the Bank to the detriment of the employee. Brink was faced with the Hobson's choice of either accepting the Bank's settlement offer and gaining, according to him, an additional $86,794 in severance benefits based upon the 84.48 percent figure, but forfeiting his entitlement to a bonus of $150,000 under the Bank's Management Incentive Plan, or litigating the Bank's denial of the bonus and later, as he claims he first discovered during the summary judgment proceeding, forgoing any entitlement to the greater gross-up factor. He, in fact, prevailed in the breach of contract action by being awarded as damages the bonus amount, an item the Bank does not contest on appeal. One can only wonder whether a questionable unwritten policy of this sort, which offers an employee a specific *755 benefit as an incentive for him or her not to litigate a greater contractual benefit, should be enforced by the courts, but because appellant has not raised this as an issue for reversal, I will not dwell on it further. But I do unreservedly agree that the question of appellant's entitlement to the higher gross-up calculation was not proper for disposition by summary judgment, based on all of the evidence presented to the court at the hearing on summary judgment and that submitted by Brinks on rehearing.
Initially, I note that our standard of review of the propriety of a denial of a motion for rehearing is whether the court abused its discretion. See Trammell v. Ward, 667 So.2d 223, 226 (Fla. 1st DCA 1995). In his motion for rehearing, Brink's attorney alleged that the newly discovered evidence was unavailable to him before the entry of the summary judgment order and, in fact, was unknown to him. Brink's counsel had previously requested the production of various formulas and other material pertaining to the applicable gross-up factor from appellee, but they were not produced, and it was only after the entry of summary judgment that the two additional documents were obtained from third-party sources indicating that Barnett Banks had used the 84.48 percent figure in ascertaining the severance benefits payable to its employees.
I note that appellee does not argue that appellant could have with diligence earlier discovered this material. Because it appears, for the reasons stated hereafter, that the lower court abused its discretion in denying the motion for rehearing by not considering the documents, which would have created the requisite genuine issue of fact if they had been received, I would reverse the summary judgment and remand the case for further proceedings.
In my opinion, the most crucial evidence appellant submitted that created a genuine-fact issue was the document showing the Bank's total severance expense caused by the Barnet/Nations Bank merger in 1997, a year before Brink's termination. The statement in the merger agreement provides in part: "Estimated cost is $46 MM plus estimated gross-up of $39 MM." As appellant points out, $39 million divided by $46 million is approximately .8448.[2] This exhibit, which the court apparently considered irrelevant, would have served to rebut Carpenter's deposition testimony implying that the higher gross-up amount was only as a matter of policy available to employees who settled with the Bank, and not to those, such as Brink, who pursued an action at law. The fact that the merger agreement unconditionally contemplated a fixed sum supporting the higher figure for all severed employees makes this issue entirely inappropriate for summary judgment. As our court has recognized: "If the record reflects even the possibility of a material issue of fact, or if different inferences can be drawn reasonably from the facts, that doubt must be resolved against the moving party and summary judgment must be denied." Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1095 (Fla. 1st DCA 1999). In my opinion, the case should be tried as to this issue if the additional documents attached to appellant's motion for rehearing can be properly authenticated.[3]
NOTES
[1] The parties represented at oral argument that the issues relating to attorney's fees have been resolved.
[2] Appellant had already submitted at the hearing an exhibit of a worksheet prepared at about the time of the merger also reflecting the higher figure.
[3] Appellee argued in its brief as an additional reason why the court's order should be affirmed that the two exhibits were unauthenticated. Appellant admits that the two were not verified due to late discovery and the trial court's orders limiting the scope of discovery requests. Remand for the purpose set out in this dissent should remedy any late discovery problems.