827 So.2d 925 (2002)
SHEPPARD & WHITE, P.A., Petitioner,
v.
CITY OF JACKSONVILLE, Respondent.
Kevin C. Shirley, Petitioner,
v.
Charlotte County, Respondent.
Charlotte County, Petitioner,
v.
Kevin C. Shirley, Respondent.
Nos. SC00-331, SC00-352, SC00-353.
Supreme Court of Florida.
September 12, 2002.
*927 Wm. J. Sheppard and D. Gray Thomas of Sheppard, White and Thomas, P.A., Jacksonville, FL, on behalf of Sheppard & White, P.A.; and Kevin C. Shirley, pro se, Punta Gorda, FL, Petitioners.
Richard A. Mullaney, General Counsel, and Howard M. Maltz, Assistant General Counsel, Office of General Counsel, Jacksonville, FL, on behalf of the City of Jacksonville; and Renee Francis Lee, County Attorney, Port Charlotte, FL, and John J. Copelan, Co-Counsel, of Shutts & Bowen, Fort Lauderdale, FL, on behalf of Charlotte County, FL, Respondents.
George L. Dorsett, Assistant County Attorney, Orlando, FL; and Gregory T. Stewart and Heather J. Melom, Co-Counsel, of Nabors, Giblin & Nickerson, P.A., Tallahassee, FL, for Orange County and Florida Association of County Attorneys, Amicus Curiae, in Case No. SC00-331.
LEWIS, J.
We have for review Sheppard & White, P.A. v. City of Jacksonville, 751 So.2d 731 (Fla. 1st DCA 2000), and Charlotte County v. Shirley, 750 So.2d 706 (Fla. 2d DCA 2000), which were consolidated for oral argument.[1] Each case involves the appointment of conflict counsel for an indigent accused, pursuant to section 925.035, Florida Statutes (1997). In each case the district court certified a question of great public importance regarding the appropriate hourly rate of compensation for services of appointed counsel for the trial level proceedings or direct appeal in a capital case. We have jurisdiction. See *928 art. V, § 3(b)(4), Fla. Const. For the reasons set forth below, we approve the decision in Sheppard & White, but quash the decision in Shirley.

Sheppard & White, P.A. v. City of Jacksonville

FACTS & PROCEDURAL HISTORY
In Sheppard & White, an attorney with the Jacksonville law firm of Sheppard & White, P.A. was appointed by the trial court as conflict counsel to represent an indigent defendant in his direct appeal of a sentence of death. Counsel obtained a reversal of the death sentence and secured a new trial for the defendant. See Murray v. State, 692 So.2d 157 (Fla.1997). Petitioner asserted below that 545 hours of attorney's time had been expended and 105.25 hours of law clerk time invested in the case, which extended over a two-year period. Petitioner filed a motion for payment of appellate fees and requested compensation at a rate of $140 per hour for attorney's time, that being the rate the petitioner believed to be the prevailing community standard for comparable representation in the Fourth Judicial Circuit. The City of Jacksonville was ordered to pay the $29,864.05 in legal fees and costs by the trial court, with compensation for attorney and law clerk time being based on a rate of $40 per hour pursuant to a local administrative order.[2] Petitioner contended that the $40 per hour rate was "confiscatory of an attorney's time, energy and talents, and denie[d][the] criminal defendant his right to the effective assistance of counsel" guaranteed by both the United States and Florida constitutions. Attached to the request for fees, petitioner presented forty-six affidavits from attorneys practicing in the Fourth Judicial Circuit. Thirteen of the affiants simply stated that compensation at the rate of $40 per hour was inadequate. Twenty-eight stated that the $40 per hour rate would prevent them from undertaking appointed capital representation. The other five affiants stated that they would not accept appointments for capital representation for reasons not pertinent here.
On review, the district court below determined that the $40 hourly rate was not confiscatory.[3] Due to the procedural posture of the case, the determination was based, at least in part, on evidence in the record that "at least one board-certified [criminal trial] attorney was accepting representation at the $40 hourly rate set by the administrative order" and that "despite the hourly rate, counsel accepted [the duty of] representation in [the instant] case." Sheppard & White, 751 So.2d at 736. The district court concluded that "the [$40] hourly rate did not materially impair the ability of lawyers to fulfill their roles" and that it did not "curtail[] the power of [the trial] court to appoint attorneys" for indigent defendants in capital cases. Id. The district court also certified a question of great public importance:
IS THE FIXED RATE OF $50 PER HOUR[4] FOR APPELLATE ATTORNEY'S *929 FEE CONFISCATORY WHEN APPLIED IN A CAPITAL CASE REQUIRING 550 HOURS OF ATTORNEY'S TIME.
For the reasons set forth below, we approve the decision of the district court and answer the certified question in the negative.

ANALYSIS
In examining the relationship between an indigent defendant's right to effective assistance of counsel in capital cases and the amount of compensation his counsel receives, we have previously stated:
It must be remembered that an indigent defendant's right to competent and effective representation, not the attorney's right to reasonable compensation, gives rise to the necessity of exceeding the statutory maximum fee cap [on remuneration for counsel representing indigent appellants in capital cases].
White v. Board of County Comm'rs of Pinellas County, 537 So.2d 1376, 1379 (Fla.1989). In White, we considered the issue of whether the statutory cap on fees[5] for counsel who represented an indigent appellant in a capital case could be exceeded when proof was presented that the cap impinged on the appellant's fundamental right to effective assistance of counsel. We determined that the cap could be exceeded because the fees fixed by the Legislature had "become so out of line with reality that they materially impair[ed] the abilities of officers of the courts to fulfill their roles of defending the indigent and curtail[ed] the inherent powers of the courts to appoint attorneys to those roles." Id. at 1378. We also stated that the statutory fee cap could be exceeded in virtually all capital cases, because of their "extraordinary and unusual" circumstances. Id. The petitioner asserts that the logic in White should apply in the instant case, because there is no appreciable difference between the level of compensation in White, which was set by the Legislature, and the hourly rate at issue here. Therefore, the petitioner contends, the $40 hourly rate established by the chief judge of the Fourth Judicial Circuit must be ruled unconstitutional because it is confiscatory. We cannot agree because here, unlike the circumstances presented in White, we are concerned not with an amount of compensation set by the Legislature in "a one size fits all" manner but, rather, with a rate that has been determined by the chief judge of the circuit after consideration of the compensation rates prevailing in the judicial circuit. Of additional import, although we allowed the statutory cap to be exceeded in White, the fee ultimately awarded to the petitioner there "conformed with the hourly rate set by the chief judge of the circuit pursuant to section 925.036(1), Florida Statutes (1985)." Id. at 1377-78.
Section 925.036, Florida Statutes (1997), states in pertinent part:
(1) An attorney appointed pursuant to s. 925.035 or s. 27.53 shall, at the conclusion of the representation, be compensated at an hourly rate fixed by the chief judge or senior judge of the circuit in an amount not to exceed the prevailing hourly rate for similar representation rendered in the circuit; however, such compensation shall not exceed the maximum fee limits established by this section.
As noted by the district court below, "[t]he importance of the administrative order setting the hourly rate cannot be ignored, *930 because the chief judge, in setting the hourly rate, is charged [by section 925.036] with being advised of the community rates for similar representation and the ability of the county budget to accommodate the expenditure of public funds for such representation." Sheppard & White, 751 So.2d at 735.[6] Moreover, we stated in White:
[I]f the statutory cap is exceeded and fees awarded based upon the local prevailing hourly rate for indigent cases, the compensation would be "reasonable" and would then balance the state's constitutional obligation and the attorney's ethical obligation [of providing adequate representation].
White, 537 So.2d at 1379.
The trial court properly determined that the issue before it was whether the hourly rate as established in Administrative Order No. 86-33 negatively impacted the right of the petitioner's client to the effective assistance of counsel. Evidence presented to the trial court by the respondent, City of Jacksonville, demonstrated that there were attorneys, and at least one of whom was a board-certified criminal trial attorney, in the Fourth Judicial Circuit who accepted appointments to represent indigents in capital cases at the $40 hourly rate.[7] The respondent also submitted evidence that, of the attorney-affiants who had stated that they would not undertake representation at the $40 hourly rate, the majority were not experienced criminal trial practitioners. Therefore, there was a basis for the district court to conclude that "there was competent, substantial evidence on which the trial court could find that the hourly rate did not materially impair the ability of lawyers to fulfill their roles." Sheppard & White, 751 So.2d at 736.
The petitioner also asserts that the hourly rate in the instant case is no more than "token compensation" of the type we disapproved in Makemson v. Martin County, 491 So.2d 1109 (Fla.1986), on the basis that it hindered the ability of the trial court to secure attorneys who could provide adequate representation to indigent defendants. Again, we cannot agree. In Makemson, the trial court, in fulfilling its responsibility to secure adequate representation for the indigent defendant, had no alternative but to accept an attorney's bid for appellate representation that substantially exceeded the statutory cap of $2000. Additionally, trial counsel requested compensation based on an hourly rate established by the chief judge of the circuit, the type of rate challenged here. In approving the trial judge's action, we determined that the level of compensation represented by the $2000 statutory cap was no more than a "token" of remuneration that had "curtail[ed] the [trial] court's inherent power to ensure the adequate representation of the criminally accused." Makemson, 491 So.2d at 1112. Conversely, in the instant case there is competent, substantial evidence which supports the trial court's decision that the $40 hourly rate did not unlawfully restrict the overall ability of the judicial branch to secure adequate counsel for indigent defendants *931 in capital cases. Makemson is therefore distinguishable from the circumstances here, which involve an award calculated on the same basis as trial counsel in Makemson.
Moreover, as recognized by the district court below, counsel in the instant case accepted representation knowing that the chief judge of the circuit had established an hourly rate of $40. As the trial judge noted at the fee hearing, counsel in the instant case knew "going in that [the representation] would be reimbursed at $40 per hour." Sheppard & White, 751 So.2d at 733. We agree with the district court that the evidence presented to the trial court is not to be reweighed on appeal. See Markham v. Fogg, 458 So.2d 1122, 1126 (Fla.1984) (when competent, substantial evidence exists to support trial court's finding, appellate court should not substitute its judgment for that of the trial court).
We also cannot accept the assertion that testimony offered at the fee hearing regarding the inability of the petitioner to cover overhead costs or to realize a profit with the $40 hourly rate alone provides sufficient justification for concluding that the constitutional right of the petitioner's client to effective assistance of counsel was negatively impacted. We agree with the district court that the decision in Hillsborough County v. Unterberger, 534 So.2d 838 (Fla. 2d DCA 1988), is highly persuasive on this issue.
Similar to the instant case, in Unterberger an attorney who had represented an indigent in an appeal of a first-degree murder conviction and sentence of death sought compensation at a rate higher than the $40 hourly rate authorized by the administrative order of the chief judge in the judicial circuit. The attorney also filed a motion to declare unconstitutional the same statute involved in the instant case, section 925.036, Florida Statutes. The attorney presented evidence to the trial court that the $40 hourly rate prevented him from covering his expenses and, relying on language from our decision in Makemson, asserted that the rate was "confiscatory of his ... time, energy and talents." Unterberger, 534 So.2d at 842 (quoting Makemson, 491 So.2d at 1115). In reversing the trial court's determination that the $40 hourly rate was unconstitutional, the Second District correctly noted that "the threshold determination" was whether the rate of compensation deprived the indigent appellant of his right to the "adequate representation of counsel." Unterberger, 534 So.2d at 842. The Second District determined that the attorney's mere showing that the $40 hourly rate would not allow him to cover his expenses was not a sufficient basis on which to conclude that his indigent client was deprived of the effective assistance of counsel. Moreover, the district court in Unterberger stated:
We do not read Makemson to hold even in the absence of a showing that the rights of indigent criminal defendants are being violated, that it is unconstitutional to compensate an attorney at a rate that he or she believes will not cover the overhead or at a rate that he or she believes is not in line with his or her experience or reputation in the community.
Id. We agree. We also must emphasize that in our view none of the cases upon which the petitioner relies establishes the proposition that a demonstrated inability to cover expenses, or to make a profit, provides justification for declaring unconstitutional the hourly rate for appellate representation established by the chief judge of a judicial circuit.[8]
*932 We are not insensitive to the tremendous burdensboth economic and emotional borne by counsel for the indigent appellant in Sheppard & White. Counsel's performance and willingness to sacrifice for the common good provide exemplars for the entire legal profession. The representation of a death-sentenced individual requires counsel to possess large measures of intellect, skill, character, creativity, and emotional stability, because counsel is charged with "the dreadful responsibility involved in trying to save [his client] from [execution]." Makemson, 491 So.2d at 1111. Florida's system for capital trials and appeals is far from simplistic. To ensure that counsel in capital cases are properly prepared for the burden of protecting the most fundamental and cherished nature of their clients' existence, we have promulgated certain standards above the mere holding of a license to practice lawwhich attorneys in capital cases are required to meet. See Fla. R.Crim. P. 3.112. We have reinforced the notion that capital cases involve the most special and intricate of circumstances by noting that "death is different." Walker v. State, 707 So.2d 300, 319 (Fla.1997); see Crump v. State, 654 So.2d 545, 547 (Fla. 1995); see also State v. Dixon, 283 So.2d 1, 7 (Fla.1973) ("Death is a unique punishment in its finality and in its total rejection of the possibility of rehabilitation."). The need for effective counsel is obvious from the perspective of both the sovereign state and the defending citizen. When counsel in a capital case falls below the threshold of effectiveness, we are all adversely impacted from the essential rights of a defendant to the tremendous waste resulting when the entire judicial process must be repeated. More importantly, interests ranging from those of the indigent accused to those of the victim's family and of society in general are not served efficiently when justice is delayed through needless repetition.
Having established a system with heightened qualifications for counsel in capital cases, it would be naive to ignore the attendant economic realities. We have previously noted the interdependence between the rate of compensation for conflict counsel and the incentive for counsel to invest the time necessary to provide adequate representation. See White, 537 So.2d at 1376; Makemson, 491 So.2d at 1112. We must express our serious concerns as to how the system for compensating conflict counsel may develop in the very near future. Florida is coming to a crossroad regarding its system for the representation of indigents in capital cases. By constitutional amendment, the State will probably soon assume the full responsibility of funding for conflict counsel no later than 2004. See art. V, § 14, art. XII, § 25, Fla. Const.
While we conclude that we cannot grant relief based on the record before us in Sheppard & White, we do caution that Florida Statutes section 925.036(1) clearly contemplates that reasonable fees will be paid for competent counsel. The "chief judge or senior judge" must necessarily make a determination as to the "prevailing hourly rate for similar representation in the circuit" before an hourly rate can be properly established for capital counsel. This contemplates an appropriate survey of the "prevailing hourly rate" in the various communities of this State as a factual determination and such determination cannot be completed in a factual vacuum. The statute contemplates that a fair hourly rate will be determined, and *933 that such will be neither artificially low nor exceed the "prevailing hourly rate for similar representation rendered in the circuit." The prevailing hourly rate concept contemplates consideration of a survey of hourly rates within the community, and it should not be based upon finding a single attorney who will accept an artificially low hourly rate, nor should it be based upon artificially high rates that may be charged by a single attorney.
We have recently concluded that appointed counsel in capital cases must meet high standards and it seems unrealistic to expect that qualified counsel will be available if a reasonable fee structure having a basis in prevailing hourly rates for the community is not utilized to determine a reasonable fee in such cases. As we look to the future and the establishment of reasonable fee schedules under section 925.036(1), the establishment of hourly rates must be predicated upon a sound factual determination and a determination of the "prevailing hourly rate for similar representation rendered in the circuit" so that proper consideration of a reasonable fee can be made. If we fail to give effect to the intent of section 925.036(1), we will simply undermine all efforts in attempting to secure competent counsel in connection with these most serious legal matters.
Sheppard & White is not before us on de novo review; therefore, we cannot view the case on the basis of the fee structure we would have awarded under that standard. Competent, substantial evidence supported the award of fees by the trial court. Therefore, we approve the decision of the district court awarding fees based on a rate of $50 per hour and answer the certified question in the negative. We agree that the petitioner is entitled to the rate established by the chief judge of the Fourth Judicial Circuit when its case was pending before the district court.

Charlotte County v. Shirley

FACTS & PROCEDURAL HISTORY
In Shirley, the petitioner, attorney Kevin Shirley, was appointed as conflict counsel for an indigent defendant in a capital murder trial. Although the charge was reduced to second-degree murder, that change occurred only four days before the trial. On appeal, Charlotte County does not challenge Shirley's assertion that he should be compensated as though he participated in a capital trial. The county also does not challenge the reasonableness of the number of hours (296) for which Shirley sought compensation. The issue below was the hourly rate at which Shirley was to be compensated. The trial court awarded compensation at a rate of $100 per hour. The Second District granted the county's writ of certiorari and quashed the trial court's order, agreeing with the county that under the administrative order of the chief judge of the Twentieth Judicial Circuit, Shirley was entitled to compensation at a rate of only $50 per hour. The district court relied on its one-sentence, per curiam opinion in Stevens v. Lee County, 695 So.2d 934 (Fla. 2d DCA 1997), which denied a petition for writ of certiorari in an attorney-fee case, as justification for its decision. However, to indicate its concern over the comparatively low rates of compensation often afforded to conflict counsel in capital cases, the district court also certified the following question as one of great public importance:
WHETHER A LOCAL ADMINISTRATIVE ORDER SHOULD LIMIT THE ATTORNEY'S FEES PAYABLE TO THE DEFENDANT'S LAWYER IN A CAPITAL CASE TO AN HOURLY RATE SUBSTANTIALLY BELOW THE HOURLY RATE AWARDED BY *934 THE COURT IN OTHER FORMS OF LITIGATION?
Shirley, 750 So.2d at 708. We rephrase this certified question to conform it to the issue under review:
IS AN ATTORNEY APPOINTED AS CONFLICT COUNSEL IN A CAPITAL CASE AUTOMATICALLY ENTITLED TO FEES BASED ON AN HOURLY RATE THAT IS EQUAL TO THE HOURLY RATE AWARDED BY THE COURT IN OTHER FORMS OF LITIGATION? [9]
We answer the rephrased certified question in the negative and, for the reasons stated below, quash the decision of the district court in Shirley with instructions that the petitioner receive compensation at the rate of $100 per hour, in keeping with the trial court's original award.

ANALYSIS
The administrative order involved in this dispute, which was issued by the chief judge of the circuit in 1991, states in pertinent part:
Pursuant to Florida Statutes §§ 27.53, 925.035 and 925.036, in all cases requiring court appointed counsel within the Twentieth Judicial Circuit where private attorneys are appointed by the Court to represent indigent defendants, the Court shall award legal fees not to exceed $50.00 per hour for reasonable billable time; provided however, that in capital cases where unusual and extraordinary circumstances exist, court appointed counsel may petition the Court for additional compensation.

Administrative Order 3.5, Twentieth Judicial Circuit (1991) (emphasis added).[10] Unlike the administrative order in Sheppard & White, the administrative order in Shirley clearly allows conflict counsel to petition the trial court for additional compensation in a capital case, based on the existence of unusual and extraordinary circumstances. We believe this language is dispositive.[11] There is competent, substantial evidence in the record to support the trial court's determination that Shirley was entitled to an award of fees based on the unusual and extraordinary circumstances of a capital case. We emphasize that we make our determination in Shirley based on the unambiguous language of the administrative order that was at issue in the case. Our decision should not be interpreted as supplying automatic justification for an hourly rate exceeding that established in the relevant administrative order when similar "petition" language is not present.
The district court also expressed its concern as to the low hourly rates of compensation often afforded to conflict counsel in criminal litigation in comparison to the fee rates utilized by courts for fee awards in other forms of litigation. We noted our concerns with regard to these compensation rates in our analysis of Sheppard & White. Here, we simply state that we find *935 no legal basis for the proposition that conflict counsel must be compensated at a rate that is equivalent to that awarded by courts to practitioners in other areas of the law. Conflict counsel is entitled to compensation at a level that ensures the provision of effective assistance to his client. However, to simply compare the hourly rate applicable to conflict counsel in capital cases to the hourly rate recognized as prevailing in areas such as eminent domain or family law litigation is, at this time, to engage in the fruitless task of comparing the proverbial "apples to oranges." We hasten to note that the economic realities related to legal services must form part of the broader analysis of providing effective counsel in this area and the establishment of compensation rates. We also note, however, that the United States Supreme Court has stated that there is no requirement "that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy." Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); see also Bailey v. State, 309 S.C. 455, 424 S.E.2d 503, 506 (1992) (funding for counsel who represents indigent in a capital case must be such that indigent has "competent" counsel).
In concluding these consolidated cases, we approve the decision in Sheppard & White and answer the certified question in the negative. In Charlotte County v. Shirley, we quash the decision of the district court and remand with instructions that the petitioner receive compensation at the rate of $100 per hour according to the original determination of the trial court. We answer the rephrased certified question in Charlotte County v. Shirley in the negative.
It is so ordered.
SHAW, WELLS, PARIENTE, and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., concurs specially with an opinion.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion, and most especially its emphasis on section 925.036(1), which expressly authorizes fees up to "the prevailing hourly rate for similar representation rendered in the circuit."
Almost thirty years ago another justice of this Court, Justice Ervin, reflected upon the same issue we address today:
No citizen can be expected to perform civilian services for the government when to do so is clearly confiscatory of his time, energy and skills, his public service is inadequately compensated, and his industry is unrewarded.
In this case it appears the Appellant Mackenzie was appointed counsel in a capital case upon the tacit assumption he would adequately and competently represent the indigent defendant. In doing so conscientiously he was compelled to provide legal services of a recognized value far in excess of the $750 statutory ceiling. The record details the voluminous amount of work involved in his representationthe large amount of time counsel expended at the expense of his private practice. There was uncontradicted evidence from reputable attorneys that a reasonable attorney's fee to compensate Appellant under the circumstances involved would be not less than $25,000.
I do not believe that good public conscience approves such shoddy, tawdry treatment of an attorney called upon by the courts to represent an indigent defendant in a capital case. Such treatment is out of harmony with the rationale of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, that a *936 reasonable measure of equal legal representation will be afforded indigents similar to that which wealthy clients are able to afford. If it were the rule in Florida that good counsel would be paid commensurate with the value of their services rendered indigent defendants, the spirit of the Gideon case and not just the letter would be more honestly and quantitatively served. Were it not for the conscientious dedication and economic sacrifice of able counsel who are usually inadequately compensated for their services, most of the indigent capital case defendants would receive short shrift in our courts. Even with this dedication one gets the feel that quite often the failure to adequately compensate counsel results in less than satisfactory indigent representation. The adage that "you get what you pay for" applies not infrequently. In our pecuniary culture the calibre of personal services rendered usually has a corresponding relationship to the compensation provided.
Mackenzie v. Hillsborough County, 288 So.2d 200, 202 (Fla.1973) (Ervin, J., dissenting). Of course, we know today that Justice Ervin was correct in his observation that "the calibre of personal services rendered usually has a corresponding relationship to the compensation provided." Fortunately, it appears that section 925.036(1) was enacted in the same spirit that Justice Ervin's words were written.
NOTES
[1] We granted petitioner-respondent Kevin Shirley's motion to consolidate briefing in Charlotte County v. Shirley (No. SC00-353) and Shirley v. Charlotte County (No. SC00-352).
[2] See § 925.036, Fla. Stat. (1997).
[3] Because the issue was presented in the form of a petition for writ of certiorari, the district court was required to review the issue under the standard of whether the trial court had departed from the essential requirements of law. See Sheppard & White, 751 So.2d at 733. A writ of certiorari is the proper vehicle for challenging an award of attorney's fees to court-appointed counsel. See, e.g., Bobbitt v. State, 726 So.2d 848, 851 (Fla. 5th DCA 1999); Jenkins v. Escambia County, 614 So.2d 1207, 1207 (Fla. 1st DCA 1993).
[4] The district court indicated the hourly rate as $50 in its certified question because during the pendency of the petitioner's proceedings before it, the chief judge of the Fourth Judicial Circuit increased the hourly compensation rate from $40 to $50. The court determined that it "should apply ... the law prevailing at the time of [the] appellate disposition," Sheppard & White, 751 So.2d at 736, and remanded the cause to the trial court "for issuance of an order increasing compensation to the rate of $50 an hour." Id.
[5] See § 925.036(2), Fla Stat. (1985).
[6] The petitioner asserts that there is no evidence in the record that the chief judge of the Fourth Judicial Circuit considered the prevailing hourly rate for similar representation rendered in the circuit. We decline to hold that the chief judge did not fulfill this statutory responsibility in the total absence of proof that he failed to do so.
[7] We note, as did the district court, that the board-certified attorney also expressed her view that the $40 hourly rate was, in general, "inadequate." This does not, however, obviate the evidence in the record that the attorney accepted appointments at the $40 hourly rate on more than one occasion. We also note record evidence from other attorneys who stated that fee requests by this board-certified attorney, which were based on the $40 hourly rate, were "reasonable."
[8] We distinguish Zelman v. Metropolitan Dade County, 586 So.2d 1286 (Fla. 3d DCA 1991), on which the petitioner also relies, on this basis. We also note that the rate awarded in Zelman had not been established in an administrative order by the chief judge of the judicial circuit.
[9] In the past we have rephrased certified questions to conform them to the issue under review. See, e.g., Waite v. Waite, 618 So.2d 1360 (Fla.1993).
[10] The order was amended in 2000 to establish a rate of $50 per hour for out-of-court work, $75 per hour for in-court work for pretrial and post-trial proceedings, and $800 per day for each day of trial.
[11] Moreover, the case on which the district court primarily relied, Stevens v. Lee County, has virtually no precedential value because it is a one-sentence per curiam decision which contains no recitation of the facts and contains no citation to any legal authority.