921 So.2d 598 (2006)
FLORIDA DEPARTMENT OF FINANCIAL SERVICES, Appellant,
v.
John D. FREEMAN, Appellee.
No. SC04-1492.
Supreme Court of Florida.
January 26, 2006.
Richard T. Donelan, Jr. and William J. Thurber, IV, Tallahassee, FL, for Appellant.
Frank J. Tassone, Jr. and Rick A. Sichta of Tassone and Eler, Jacksonville, FL, for Appellee.
QUINCE, J.
The Florida Department of Financial Services (Department) appeals an order from the Circuit Court of the Fourth Judicial Circuit granting John D. Freeman's motion for payment of attorney's fees in excess of the statutory maximum for defense counsel's representation of Freeman for the filing of a petition for writ of certiorari to the United States Supreme Court. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons *599 explained below, we vacate the trial court's order and remand for an evidentiary hearing on the issue of attorney's fees pursuant to section 27.711, Florida Statutes (2005).

FACTS
This case involves the payment of attorney's fees to a registry attorney in excess of the amounts provided for by statute. John D. Freeman, a prisoner under a sentence of death, appealed to this Court the trial court's denial of his motion for postconviction relief. After briefing and oral argument on the appeal by another lawyer, the trial court appointed attorney Frank J. Tassone (Tassone) to represent Freeman. Ten days after this Court affirmed the trial court's denial of postconviction relief, Tassone filed a motion for extension of time to file a motion for rehearing. A motion for rehearing was filed, arguing in substantial part that Freeman was entitled to relief based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We denied the motion for rehearing, and thereafter Tassone filed a petition for writ of certiorari in the United States Supreme Court based on the Ring issue he raised in Freeman's motion for rehearing. The petition for writ of certiorari was denied.
After certiorari relief was denied, Tassone filed a motion in the circuit court for attorney's fees and miscellaneous expenses pursuant to section 27.711, Florida Statutes (2005). The motion sought fees and costs for work performed and expenses incurred on and after November 12, 2003; that is, for work on the petition for writ of certiorari. Tassone sought a total of $27,940.74 in fees and costs. The Department argued that the amount requested was unreasonable and should be limited to the statutory amount of $2,500 plus applicable costs. See § 27.711(4)(g), Fla. Stat. (2005). Tassone argued that because he became involved in Freeman's case after the postconviction motion was denied, he did not have a working knowledge of the case, and therefore had to review forty boxes of record in order to adequately represent Freeman. The trial court granted Tassone's motion and ordered the Department to pay the fees and costs. The Department filed this appeal, alleging that the circuit court departed from the essential requirements of law by refusing to apply the maximum fee limit prescribed by the statute.

LAW AND ANALYSIS
Section 27.711, Florida Statutes (2005), governs the payment of fees to appointed counsel in postconviction capital proceedings, and is the "exclusive means of compensating a court-appointed attorney who represents a capital defendant." Id. § 27.711(3). Section 27.711(4) outlines the maximum amount an attorney is entitled to be compensated at each stage of the postconviction process. Section 27.711(4)(g) is particularly applicable in this case and provides:
At the conclusion of the capital defendant's postconviction capital collateral proceedings in state court, the attorney is entitled to $100 per hour, up to a maximum of $2,500, after filing a petition for writ of certiorari in the Supreme Court of the United States.
In addition, the attorney may request up to a maximum of $15,000 for approved incidental costs, such as investigators. See id. § 27.711(5). The attorney may also be reimbursed up to $15,000 for miscellaneous expenses, such as copying and expert witness fees. See id. § 27.711(6). Since 1998, this particular subsection has provided that expenses exceeding $15,000 that are incurred under extraordinary circumstances may be paid at the court's discretion. Id.
*600 Tassone submitted to the Department two invoices for fees and costs associated with the preparation and filing of the petition for writ of certiorari, totaling $27,940.74. The Department responded that the statute authorized payment of only $2,500 for attorney's fees. Tassone set the issue for hearing, and the matter was heard telephonically. During the hearing, Tassone explained to the judge that he had to review the entire record because he did not represent Freeman during the trial, appeal, or postconviction process. Tassone explained that at that time the retroactive application of Ring was a relevant issue and he had to educate himself to assess the applicability of such a claim in Freeman's case. The judge accepted Tassone's explanation for incurring excessive time and expenses and concluded that the hours billed were reasonable. The judge granted Tassone's motion for fees and costs in its entirety.
This Court has held that it is within the trial judge's discretion to grant fees beyond the statutory maximum to registry counsel in capital collateral cases when "extraordinary or unusual circumstances exist." Olive v. Maas, 811 So.2d 644, 654 (Fla.2002). In Olive, this Court held that fees in excess of the statutory cap are not always awarded to registry counsel in capital collateral cases; however, registry counsel is not foreclosed from requesting excess compensation "should he or she establish that, given the facts and circumstances of a particular case, compensation within the statutory cap would be confiscatory of his or her time, energy and talent and violate the principles outlined in Makemson and its progeny." Id.; see also Makemson v. Martin County, 491 So.2d 1109 (Fla.1986).
Makemson is the seminal case for determining whether appointed counsel in capital cases is limited to the compensation provided within the statutory schemes set forth by the Legislature. At issue in Makemson was the constitutionality of a statute that set a fee schedule for compensation to attorneys who represented capital defendants at the trial and during direct appeal stages. This Court held that the statute was not unconstitutional on its face, but further indicated the statute could be unconstitutional if applied "in such a manner as to curtail the court's inherent power to ensure the adequate representation of the criminally accused." Makemson, 491 So.2d at 1112. This Court then explained that the trial court may depart from the statutory fee caps and award excess fees "in extraordinary and unusual cases ... to ensure that an attorney who has served the public by defending the accused is not compensated in an amount which is confiscatory of his or her time, energy and talents." Id. at 1115. Inadequate compensation could create an economic disincentive for appointed counsel to spend more than a minimum amount of time on the case and discourage competent attorneys from agreeing to represent indigent capital defendants. In effect, such a lack of competent attorneys could jeopardize an indigent defendant's constitutional right to the effective assistance of counsel. While the defendant's right to effective representation was the main focus of the Makemson decision, this Court nonetheless reasoned that counsel's right to fair compensation was inextricably intertwined with that right. Id. at 1112.
The Makemson rationale, that compensation of counsel and the effectiveness of counsel are inextricably intertwined, was applied in the capital collateral context in Olive. That rationale is also expressed in the legislative staff analysis to chapter 99-221, Laws of Florida, which clearly articulates the Legislature's concern with the fee caps in capital collateral cases. The legislative history states specifically that *601 "where unusual or extraordinary circumstances exist, the fees caps established by s. 27.711(4), F.S., and increased by the provisions of this bill, do not prevent a court from ordering payment above the maximum authorized." Fla. S. Comm. on Crim. Just., CS for SC 2054, Staff Analysis 7 (March 17, 1999) (on file with the comm.); see also Olive, 811 So.2d at 653; Arbelaez v. Butterworth, 738 So.2d 326, 328 (Fla.1999) (Anstead, J., specially concurring).
In this case, the Department does not contest the application of Makemson and its progeny to this collateral proceeding. The Department argues that Tassone did not adequately establish that unusual or extraordinary circumstances sufficiently existed in order to warrant compensation in excess of the statutory cap. The trial court granted Tassone's request for fees in full after hearing a brief argument by counsel and over the objection by the State. The trial court found that the $2,500 statutory maximum was not a sufficient amount for attorney's fees incurred in the preparation and filing of the petition for writ of certiorari and the reply brief in opposition. The trial court ordered the Department to pay Tassone the total amount of $27,940.74 in fees and miscellaneous expenses and cited to section 27.711(4)(a)-(d), (6), Florida Statutes. In addition, the trial judge commented that Tassone has an excellent reputation and he was confident that Tassone reviewed the documents he said were necessary in order to represent his client competently. However, no experts testified on behalf of counsel regarding such things as the necessity to research and review any particular portion of the record for the preparation of the petition for writ of certiorari, what would have been reasonable in these circumstances, or whether this case presented an extraordinary or unusual situation requiring fees in excess of the statutory amount.
Because the trial court's decision in a case involving attorney's fees is based upon findings of fact, it will not be disturbed if supported by competent, substantial evidence. See, e.g., Sheppard & White, P.A. v. City of Jacksonville, 827 So.2d 925, 933 (Fla.2002) (finding competent, substantial evidence supported the award of fees by the trial court); Philip J. Padovano, Florida Appellate Practice, § 9.6 at 138 (2005 ed.). Thus, we consider whether there is competent, substantial evidence to support the trial court's decision in this case.
While an attorney assigned to represent a death row inmate for the first time at the federal appeal stage may face extraordinary or unusual circumstances requiring many hours of work to justify payment in excess of the statutory limits, the attorney has the burden of establishing facts in support of such an award. The record in this case, however, provides no evidence upon which the judge could rely to determine if extraordinary or unusual circumstances existed to support an award of excess fees. The record in this case consists of only nine pages comprising the motion for an order of payment of attorney's fees, the notice of hearing, the order on the motion for payment of attorney's fees, and the notice of appeal. While the transcript of the hearing includes arguments of counsel, no sworn testimony was presented. There is no discussion of what was contained in the boxes of record or how many volumes pertained to postconviction proceedings as opposed to those proceedings on direct appeal, etc. The billings were not verified, there is no testimony regarding the propriety of the time submitted in the billings, and there is no testimony from any expert as to the extraordinary *602 or unusual aspects of Tassone's representation.
Because there is no competent, substantial evidence in the record to support an award of fees in excess of the statutory amounts, we remand this case to the trial court for an evidentiary hearing on this issue.
Tassone argues that the statutory scheme for the payment of attorney's fees is unconstitutional as applied to him. This argument was never raised below and cannot be raised for the first time on appeal. See Turner v. State, 888 So.2d 73, 74 (Fla. 5th DCA 2004) (holding that constitutional challenge to a statute made for the first time on appeal would not warrant reversal of trial court's ruling).
Tassone also argues that the statutory fee cap under section 27.711 is unconstitutional on its face because all death cases are extraordinary and unusual and attorney's fees should not be capped. See, e.g., White v. Bd. of County Comm'rs of Pinellas County, 537 So.2d 1376, 1378 (Fla.1989) (finding that "all capital cases by their very nature can be considered extraordinary and unusual and arguably justify an award of attorney's fees in excess of the current statutory fee cap"); see also State v. Johnson, 616 So.2d 1, 3 (Fla.1993) ("A facial challenge to a statute's constitutional validity may be raised for the first time on appeal only if the error is fundamental."). However, this Court has determined that statutory fee caps are not facially unconstitutional. See; Olive, 811 So.2d at 654; Makemson, 491 So.2d at 1112. The mere fact that the case is one where the death penalty could be or has been imposed does not render the statutory limits facially unconstitutional.

CONCLUSION
While we appreciate the time it takes to effectively prepare for a trial, prepare an appeal, prepare and present a motion for postconviction relief, or prepare a petition for writ of certiorari in capital cases, and while we understand that some cases merit payment in excess of the statutory limits, the justification for exceeding those limits must be demonstrated by competent, substantial evidence in the record. Tassone's justification in support of exceeding the statutory limits was incomplete. Thus, we conclude that the trial court's order granting Freeman's motion for attorney's fees in excess of the statutory limit is not supported by competent, substantial evidence. We therefore reverse the trial court's order and remand this matter for a full evidentiary hearing.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., specially concurs with an opinion, in which ANSTEAD and CANTERO, JJ., concur.
CANTERO, J., concurs with an opinion, in which WELLS and BELL, JJ., concur.
PARIENTE, C.J., specially concurring.
This case demonstrates an unanticipated consequence of the pilot program that eliminates funding for the Office of the Capital Collateral Regional Counsel for the Northern Region of Florida (CCRC-North) the costs of replacing counsel at an arbitrary point in the proceedings.
Rather than permit former CCRC-North counsel to continue to represent Freeman when the office was defunded, the trial court appointed new counsel.[1] *603 The new counsel seeks $28,000 in legal fees and costs for filing a motion for rehearing in this Court and a petition for a writ of certiorari on a discrete issue in the United States Supreme Court. Counsel asserts, in explaining the fee request, that this amount is justified because he was unfamiliar with the case when he was appointed and had to review forty boxes of record to adequately represent Freeman. Majority op. at 599. Had Freeman's CCRC-North counsel continued to represent him, either as part of that agency or as registry counsel, the State would not now face a demand by new counsel for such exorbitant fees.
The enactment creating the pilot program and eliminating funding for CCRC-North was originally limited to a single fiscal year ending July 1, 2004. See ch.2003-399, § 84, Laws of Fla. The Legislature subsequently gave the project an indefinite extension and directed the Auditor General to provide a performance review before the 2007 legislative session. See ch.2004-240, § 1, Laws of Fla. (codified in § 27.701(2), Laws of Fla. (2005)). The performance review is intended "to determine the effectiveness and efficiency of using attorneys from the registry compared to the capital collateral regional counsels," and "at a minimum, shall include comparisons of the timeliness and costs of the pilot and the counsels." Id.
This case clearly implicates considerations of efficiency, timeliness, and costs. It shows that when a new attorney displaces CCRC, he or she must take time to become familiar with the case, and will likely seek to be compensated accordingly. The change in counsel thus decreases efficiency, increases costs, and may delay proceedings. Substitution of private counsel for a state agency can be especially problematic if it occurs at or near the time a death warrant is signed. A related concern is a loss in accountability when a state agency is replaced by private counsel. Only one registry attorney, often a solo practitioner, is assigned to each case. See § 27.710(6), Fla. Stat. (2005) (providing that no more than one attorney may be appointed and compensated to represent a defendant, but allowing counsel to designate an assistant). In contrast, once CCRC is assigned to a capital defendant, the office remains responsible for that individual's representation regardless of a turnover in personnel. Thus, there is institutional accountability to the Court for postconviction representation.
Although it will be difficult for an auditor to measure effectiveness, quality of representation is a significant concern in a system staffed solely by counsel who are willing to sign up for the registry, knowing its fee caps. Under section 27.710(3), Florida Statutes (2005), attorneys who join the registry must agree to abide by its terms and conditions, including the ceilings on fees in section 27.711(4), Florida Statutes (2005). Some attorneys regard compensation *604 under these caps to be inadequate under the circumstances of capital postconviction representation. See, e.g., State v. Demps, 846 So.2d 457, 457 (Fla. 2003) (addressing appeal of fee award by attorney who claimed he was entitled to compensation at rate higher than specified in section 27.711(4)). Further, for the registry to be a viable system for competent postconviction representation, counsel should have a centralized source of support for research, investigation, and pooling of information. This system is already built into the CCRCs.
Although there is no constitutional right to effective assistance of postconviction counsel, the credibility of our death penalty system depends in large part on the quality of the attorneys who undertake the representation. In addition, the public has a strong interest in cost-effective representation by the attorneys provided to indigent capital defendants in postconviction proceedings. I urge the Legislature to take the factors discussed herein into consideration in assessing whether the results of the CCRC-North experiment warrant that the pilot program be extended, expanded, or concluded.
ANSTEAD and CANTERO, JJ., concur.
CANTERO, J., concurring.
I agree to remand this case because the record "provides no evidence upon which the judge could rely to determine if extraordinary or unusual circumstances existed to support an award of excess fees." Majority op. at 601. I write separately, however, in an attempt to offer some guidance on remand about what constitutes "extraordinary or unusual circumstances."
When we last considered this issue, we held that registry counsel may be awarded excess fees when "compensation within the statutory cap would be confiscatory of his or her time, energy and talent." Olive v. Maas, 811 So.2d 644, 654 (Fla.2002). Unlike the situation in Olive, however, in this case counsel signed a contract with the Department of Financial Services in which he agreed to the statutory fee schedule. I do not see how it would be "confiscatory" to hold him to the foreseeable consequences of his bargain. Thus, any compensation above the statutory amount should be for work that was unforeseeable when he signed the contract. Moreover, given that the statutory caps at least presumptively apply, even if "extraordinary or unusual circumstances" justify additional fees, the benchmark for those fees should continue to be the statutory caps, not the market rate for the work performed.
I will first summarize our relevant precedents, up to and including Olive. I will then explain how the attorney's contract with the Department distinguishes this case from Olive. Finally, I will apply the reasoning in Olive to derive an unforeseeability requirement and a rule that awards above the statutory caps should be calculated with the caps, not the market rate, as the benchmark.

A. The Precedents
We first opened the door to extra-statutory compensation in Makemson v. Martin County, 491 So.2d 1109 (Fla.1986). There, an attorney who represented an indigent criminal defendant in a first-degree murder trial sought compensation above the applicable statutory caps. See § 925.036, Fla. Stat. (1981). We held that the caps, while not facially unconstitutional, could be "unconstitutional when applied to cases involving extraordinary circumstances and unusual representation." Makemson, 491 So.2d at 1110. In such cases, we said, the caps threaten to interfere with the defendant's Sixth Amendment right to counsel and with the judiciary's "inherent power to ensure the adequate representation of the *605 criminally accused." Id. at 1112. Thus, we concluded that a trial court may depart from the caps when necessary to prevent an attorney from being "compensated in an amount which is confiscatory of his or her time, energy and talents." Id. at 1115.
Three years later, we announced that "virtually every capital case fits within [Makemson's] standard and justifies the court's exercise of its inherent power to award attorney's fees in excess of the current statutory fee cap." See White v. Bd. of County Comm'rs, 537 So.2d 1376, 1380 (Fla.1989). As we explained, the statutory fees for capital cases were at that time "unrealistic," amounting to little more than "token compensation." Id. at 1379-80. To protect the Sixth Amendment rights of capital defendants, we authorized additional fees in most capital cases.
Both Makemson and White involved the representation of criminal defendants at trial and on direct appeal, where they have a constitutional right to counsel. In Remeta v. State, 559 So.2d 1132 (Fla.1990), however, we extended this reasoning to executive clemency proceedings, without "reach[ing] the question of whether an indigent, death-sentenced prisoner has a state or federal constitutional right to counsel" in that setting. Id. at 1135 n. 4. We explained that, regardless of whether counsel is constitutionally required, "this state has established a right to counsel in clemency proceedings for death penalty cases, and this statutory right necessarily carries with it the right to have effective assistance of counsel." Id. at 1135. Because the statutory fee cap threatened to undermine that right, see § 925.035(4), Fla. Stat. (1987), we held that courts could award extra compensation "when necessary to ensure effective representation" and "to prevent confiscatory compensation of counsel." Remeta, 559 So.2d at 1135.
Then, in Olive v. Maas, 811 So.2d at 644, we went even further. The issue there was whether trial courts may award more than the statutory fee caps to attorneys representing defendants in the postconviction context. Of course, we have held many timesand have reiterated only just recentlythat prisoners enjoy no constitutional right to such counsel. See, e.g., Zack v. State, 911 So.2d 1190, 1203 (Fla. 2005) ("Under Florida and federal law, a defendant has no constitutional right to effective collateral counsel."). That right is purely statutory. Nevertheless, by a vote of four to three, this Court held that even in such cases attorneys may be awarded fees above the caps "where unusual or extraordinary circumstances exist." Olive, 811 So.2d at 654.
The majority in Olive did not base its decision on any constitutional right to postconviction counsel. Instead, it interpreted the statuteor rather, the legislative history of the statuteas allowing for fees exceeding the caps. The statute provided that "[t]he fee and payment schedule in this section is the exclusive means of compensating a court-appointed attorney who represents a capital defendant" in collateral proceedings. § 27.711(3), Fla. Stat. (Supp.1998). Yet the majority determined from "the legislative history and staff analysis" that the Legislature intended to "accommodate" an implied exception. Olive, 811 So.2d at 654. Thus, it held that registry counsel "is not forever foreclosed from seeking [extra] compensation should he or she establish that ... compensation within the statutory cap would be confiscatory of his or her time, energy and talent." Id.
I question this Court's interpretation of the statute in Olive. It appears to elevate the staff analysis over the statute's plain text. As I have previously explained,
[W]here the language is clear, courts need no other aids for determining legislative *606 intent. Even if the language were not clear, legislative staff analyses add nothing to an investigation of legislative intent. Staff analyses are not written by legislators but, as the name implies, by staffthat is unelected employees.... Another problem with relying on a staff analysis is that no evidence exists that any of the legislators who voted for the proposed bill even read the analysis, much less agreed with it.... The fact is that even if all the legislators read the staff analysis of a bill, they could disagree with it and still vote in favor of the bill itself. The only text with which a legislator must agree is the text of the bill itself.
Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 376 (Fla.2005) (Cantero, J., concurring in part and dissenting in part) (citations omitted).
Thus, I am not convinced that Olive was correct. However, because the parties in this case have not asked us to overrule or recede from it, I do not address that issue. Nevertheless, given that Olive represents an extra-statutory remedy, and given that the statutory caps should mean something, the award of fees exceeding the cap should be determined with the caps in mind. They should be the benchmark. The exception should be narrow, applied rarely, and exceed the caps only to the extent necessary to prevent "confiscat[ing]" the attorney's "time, energy and talent." Olive, 811 So.2d at 654.

B. The Contract
This case involves the same legal issue as Olive, but is based on different circumstances. In Olive, the attorney refused to sign the standard contract for registry counsel, fearing it would handcuff him to the statutory fee schedule. The contract "tracks the language in section 27.711(3)(4), and incorporates the entire compensation scheme by reference." Olive, 811 So.2d at 651. Signing the contract is a statutory requirement:
Each private attorney who is appointed by the court to represent a capital defendant must enter into a contract with the Chief Financial Officer.... The Chief Financial Officer shall develop the form of the contract, function as contract manager, and enforce performance of the terms and conditions of the contract. By signing such contract, the attorney certifies that he or she intends to continue the representation under the terms and conditions set forth in the contract until the sentence is reversed, reduced, or carried out or until released by order of the trial court.
§ 27.710(4), Fla. Stat. (2005) (emphasis added). The attorney in Olive had not yet accepted an appointment. With the case in this speculative posture, the majority had no opportunity to apply the law to specific facts. It merely announced, in the abstract, that signing the contract would "not forever foreclose[]" the attorney from recovering extra fees. 811 So.2d at 654. Three dissenters protested that the case should have been dismissed for lack of standing, because the attorney "had no contract, no client, no case and no real facts to support his various claims." Id. at 658 (Harding, J., dissenting, joined by Wells, C.J., and Quince, J.).
Unlike the situation in Olive, this case involves real facts. The attorney here did have a client, a case, and a contract with the Department. Under that contract, he agreed to represent a death-sentenced prisoner whose postconviction appeal was pending before this Court. Just after his appointment, we released our decision denying relief. See Freeman v. State, 858 So.2d 319 (Fla.2003). The attorney responded by, first, moving for rehearing based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *607 second, petitioning the United States Supreme Court for a writ of certiorari based on the same issues. See Freeman v. Florida, 541 U.S. 1010, 124 S.Ct. 2069, 158 L.Ed.2d 620 (2004) (denying review). For the latter effort, he sought $27,940.74 in fees and costsmore than ten times the statutory maximum of $2,500 plus costs. See § 27.711(4)(g), Fla. Stat. (2005). The trial court granted the entire amount. The attorney now defends that decision as falling within Olive's "unusual or extraordinary circumstances" exception.
As the majority concludes, we lack a sufficient record to determine whether this case meets the Olive standard. Therefore, the case must be remanded for an evidentiary hearing. One issue on remand will be how the attorney's contract with the Department, in which he agreed to a certain fee schedule, affects the analysis. We should guide the judge in that determination. In the following sections, I propose two guiding principles, which I derive from Olive: (1) that compensation above the statutory fee schedule should be limited to work that was unforeseeable at the time of contracting; and (2) that even when courts award additional fees, the benchmark for calculating them should remain the statutory caps, not the attorney's market rate. I will explain each principle in turn.

1. An Unforeseeability Requirement
The first principle I derive from Olive is a requirement of unforeseeability. Olive held that capital collateral counsel may be paid more than the statutory limits when "compensation within the statutory cap would be confiscatory of his or her time, energy and talent." 811 So.2d at 654. In cases like this one, where counsel has signed a contract with the Department that incorporates the statutory fee structure, paying him the contractual rate for the foreseeable work cannot be considered "confiscatory." I therefore interpret Olive to mean that attorneys who contract with the Department may be given extra compensation only for work that was unforeseeable at the time of contracting.
We have long recognized that "while there is no such thing as an absolute freedom of contract, nevertheless, freedom is the general rule and restraint is the exception." Larson v. Lesser, 106 So.2d 188, 191 (Fla.1958); see also Bituminous Cas. Corp. v. Williams, 154 Fla. 191, 17 So.2d 98, 101 (1944) (calling it "a matter of great public concern that freedom of contract be not lightly interfered with"). This freedom empowers parties to join together in pursuit of mutually beneficial ends. But it also "includes freedom to make a bad bargain." Posner v. Posner, 257 So.2d 530, 535 (Fla.1972). Courts may not "rewrite contracts or interfere with freedom of contracts or substitute [their] judgment for that of the parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain." Quinerly v. Dundee Corp., 159 Fla. 219, 31 So.2d 533, 534 (1947). The parties are masters of their own contract, and then servants to its ultimate terms.
I certainly do not mean to suggest that because attorneys continue to contract with the Department, the statutory fee schedule must be adequate. Quite the contrary: I believe that, in most cases, the statutory fees fall far below the market rate. Like the caps that we criticized in White, the caps for registry counsel are frequently "unrealistic" and amount to little more than "token compensation." 537 So.2d at 1379-80. But the fact remains that no attorney is ever required to accept a registry appointment. In this case, the attorney, if he found the statutory fee schedule insufficient, could have declined the appointment and sought more profitable work. Conversely, the Department has a right to insist upon hiring only attorneys *608 willing to accept the fee schedule. Yet these parties chose to bind themselves in what they must have regarded as a mutually beneficial relationship. Thus, barring some exception to freedom of contract, they must be held to their word.
Olive recognizes a limited exception to freedom of contract for "unusual or extraordinary circumstances" where a registry attorney's contract with the Department becomes "confiscatory of his or her time, energy and talent." 811 So.2d at 654. This standard appears analogous to the commercial frustration doctrine. Under that doctrine, the district courts have sometimes offered relief from contractual obligations "where the parties could not provide themselves by the terms of the contract against the happening of subsequent events." Hilton Oil Transp. v. Oil Transp. Co., 659 So.2d 1141, 1147 (Fla. 3d DCA 1995); see also Brink v. Bank of Am., N.A., 811 So.2d 751, 753 (Fla. 1st DCA 2002) (same). But the doctrine "does not apply where the intervening event was reasonably foreseeable and could and should have been controlled by the provisions of such contract." Hilton Oil, 659 So.2d at 1147; see also Home Design Ctr.Joint Venture v. County Appliances of Naples, Inc., 563 So.2d 767, 770 (Fla. 2d DCA 1990) ("Even under theories which permit a broader application of the doctrine of commercial frustration, the defense is not available concerning difficulties which could reasonably have been foreseen by the promisor at the creation of the contract."). Nor does the doctrine "excuse performance that is not impossible but merely inconvenient, profitless, and expensive." Valencia Ctr., Inc. v. Publix Super Mkts., Inc., 464 So.2d 1267, 1269 (Fla. 3d DCA 1985).
The words used in Olive to describe its exception to freedom of contract"unusual," "extraordinary," "confiscatory"also imply a requirement of unforeseeability. The word "confiscatory" is particularly instructive. To confiscate means "[t]o appropriate (property) as forfeited to the government" or "[t]o seize (property) by authority of law." Black's Law Dictionary 319 (8th ed.2004). Nothing is forfeited or seized when an attorney receives the contractual price for performing foreseeable work that he agreed to perform. It is a voluntary exchange, with benefits and burdens flowing in each direction.
Under the Makemson line of cases, as with the commercial frustration doctrine, the mere fact that the attorney's bargain proves less profitable or expedient than he might have hoped is insufficient to relieve him of his contractual obligations. See Sheppard & White, P.A. v. City of Jacksonville, 827 So.2d 925, 931 (Fla.2002) ("We do not read Makemson to hold ... that it is unconstitutional to compensate an attorney at a rate that he or she believes will not cover the overhead or at a rate that he or she believes is not in line with his or her experience or reputation in the community.") (quoting Hillsborough County v. Unterberger, 534 So.2d 838, 842 (Fla. 2d DCA 1988)).
Thus, Olive strongly suggests that attorneys who sign a contract with the Department that incorporates the statutory fee schedule may recover compensation above the statutory caps only for work that was unforeseeable at the time of contracting. Unless counsel can show that circumstances have somehow changed from the time he signed the contract, and that he should not reasonably have anticipated that change, Olive requires that he be held to the terms of his bargain. In other words, the attorney must show that the work was unforeseeable, not merely unprofitable.
Here, the attorney may find it difficult to demonstrate that his work was unforeseeable. *609 He initially defended his request for extra compensation by explaining to the trial court:
We got appointed after the denial of the last item in the Florida Supreme Court and consequently had to read the 40 boxes of material in order to prepare the petition for the writ of certiorari to the United States Supreme Court. That's exactly why it took those many hours.
While undoubtedly substantial, this work appears to have been entirely foreseeable. The attorney knew it was a postconviction death-penalty appeal, and that we had already remanded once for an evidentiary hearing on an ineffective assistance claim. See Freeman v. State, 761 So.2d 1055 (Fla. 2000). Thus, he knew that the record would be large and that, to understand the issues in the case, he would need to review both the record and the relevant caselaw. He also knew that the case involved issues of federal law and consequently might be reviewable in the United States Supreme Court.
The issue that the attorney ultimately emphasized in the certiorari petitionthe retroactivity of Ringalso should have been foreseen. Ring was decided in June 2002, more than a year before the attorney accepted the appointment. We began wrestling with its implications almost immediately. See Bottoson v. Moore, 833 So.2d 693, 695 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143, 144 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). As we have noted, "virtually every postconviction appeal filed in this Court since Ring invokes that case." Johnson v. State, 904 So.2d 400, 406 (Fla.2005). Thus, assuming the attorney studied legal developments related to capital cases, as the statute requires registry counsel to do, see § 27.710(1), Fla. Stat. (2005), he should have anticipated such a claim.
While I suspect that most, if not all, of the attorney's work in this case was foreseeable at the time of contracting, the record is simply too sparse to know for sure. The trial court will have to evaluate the issue on remand. At the very least, however, before receiving compensation in excess of the statutory fee schedule to which he agreed, the attorney should be required to identify unforeseen circumstances.

2. The Caps as the Benchmark
The second principle I derive from Olive is that even where registry counsel can show "unusual or extraordinary circumstances" justifying additional fees, the statutory caps should remain the benchmark against which further amounts are calculated.
Olive recognized that the Legislature generally intended for the statutory fee schedule to act as a ceiling, not a floor. The schedule is expressly identified as "the exclusive means of compensating a court-appointed attorney who represents a capital defendant" in collateral proceedings. § 27.711(3), Fla. Stat. (2005). The word "maximum" appears in the schedule eleven times, and the statute directs that, if desired, counsel should "seek further compensation from the Federal Government." Id. Additionally, the statute provides that compensation for attorneys who withdraw or are removed from a case "may not exceed the amounts specified in this section." § 27.711(8), Fla. Stat. (2005). Therefore, the statute itself dictates that, in the vast majority of cases, the fees must conform to the statutory caps.
In a small percentage of cases, Olive did authorize additional fees. Yet because Olive was based not on constitutional principles but on the legislative intent behind the statute, the caps and the Legislature's *610 right to determine them remain relevant to the calculation of additional fees. As I noted earlier, we have never held that defendants enjoy a Sixth Amendment right to counsel in the postconviction context. That right is purely statutory. The Legislature has granted it. Therefore, the Legislature has full authority to determine its parameters. In other words, because in postconviction cases the Legislature could decide not to grant any right to counsel at all, it can also grant a qualified righta right to counsel only at specified rates. As we have explained, "it is within the legislature's province to appropriate funds for public purposes and resolve questions of compensation." White, 537 So.2d at 1379.
Our decision in Olive recognized as much. We merely inferred that the Legislature had implied an authorization to exceed the caps in "unusual or extraordinary circumstances." Even in those cases, however, the statutory fee schedule remains the mostif not the onlyreliable guide to what the Legislature regarded as an appropriate level of compensation. In fairness to registry attorneys who accept usual and ordinary cases, and therefore must receive the statutory fees, any further compensation should be proportional to the statutory caps and, as Olive suggested, should be awarded only to the extent necessary to prevent "confiscat[ion]" of the attorney's "time, energy and talent." 811 So.2d at 654. This amount will typically be far less than the market rate for the actual time spent on the case. As we noted in Sheppard & White, 827 So.2d at 931, it is not unconstitutional to compensate an attorney at rates that do not cover overhead or are not commensurate with the attorney's experience or reputation in the community. Therefore, even in exceptional circumstances the statutory caps should remain the benchmark against which the ultimate award is calculated.
This case illustrates how using the caps as a benchmark would differ from simply multiplying the attorney's actual hours worked by a competitive rate. The statute would have capped compensation here at "$100 per hour, up to a maximum of $2,500" plus costs. § 27.711(4)(g), Fla. Stat. (2005). Yet the attorney sought, and was awarded, $27,940.74. He arrived at this amount by billing virtually all of his work at $100 per hour. If we were to accept this method of calculation, then the fee schedule for registry counsel would effectively become "$100 per hour, with no maximum." That is neither what the statute says nor what Olive authorized. Rather, Olive implied that the attorney must perform the foreseeable work for the statutory rate, and may be given extra compensation only to the extent necessary to prevent the confiscation of his unforeseeable efforts. Accordingly, in this case, the trial court should work upward from the statutory benchmark of $2,500not downward from the billed amount of $27,940.74until it reaches a level of compensation that can no longer be considered confiscatory.
Without retaining the caps as the benchmark in these cases, we run the risk that courts will, contrary to the statutory directive in section 27.711, continually increase compensation for registry counsel to keep pace with the cost of living. We then run the added risk that the Legislature, seeing its caps regularly disregarded, will simply strip capital defendants of any right to counsel in postconviction cases. Although I believe that the statutory caps often do not adequately compensate registry attorneys for the valuable work they perform, I also believe that the proper mechanism for increasing their compensation is through statutory amendment, not through a series of judicial accretions.

*611 C. Conclusion
I concur with the majority's decision to remand the case. On remand, I urge the trial court to apply the principles set forth above.
WELLS and BELL, JJ., concur.
NOTES
[1] As an aside, counsel in this case was previously involved in litigation in this Court arising from the defunding of CCRC-North. He was appointed in two other capital postconviction proceedings over the protests of the defendants who expressed the desire that the former CCRC counsel be allowed to continue with the representation. In both Sweet v. State, 880 So.2d 578 (Fla.2004), and Ferrell v. State, 880 So.2d 578 (Fla.2004), we approved trial court appointments of registry counsel rather than the defendants' former CCRC-North counsel, but remanded for the findings required by section 27.710(5), Florida Statutes (2003). I pointed out that "the trial court appointed counsel other than [the defendant's] CCRC-North counsel, with whom [the defendant] had an established and ongoing relationship." Sweet, 880 So.2d at 578 (Pariente, C.J., concurring); Ferrell, 880 So.2d at 579 (Pariente, J., concurring). Although there may have been good reason to appoint this registry counsel over former CCRC counsel in each of these cases, it is surely preferable to preserve the ongoing attorney-client relationship whenever possible.