967 So.2d 281 (2007)
BARCO HOLDINGS, LLC, Appellant,
v.
TERMINAL INVESTMENT CORPORATION, Bernuth Agencies, Inc., and Bernard Korman, as Trustee and not Individually and/or assigns, Appellees.
Nos. 3D06-2894, 3D05-2073, 3D06-2893, 3D05-1913.
District Court of Appeal of Florida, Third District.
September 26, 2007.
*284 Hogan & Hartson and Carol A. Licko, Daniel E. Gonzalez, Richard C. Lorenzo and Vanessa A. Sisti, Miami, for appellant.
Keith D. Diamond; Jay M. Levy; Ruden McClosky and Ronald A. Shapo; Adorno & Yoss and Jack R. Reiter, Miami, and Alan J. Perlman, Fort Lauderdale, and Natalie J. Carlos, Miami, for appellees.
Before GREEN, WELLS, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
Barco Holdings, LLC ("Barco") appeals from four trial court orders entered against it on various claims. Terminal Investment Corporation ("Terminal") owns an island ("Terminal Island") next to Fisher Island, which is leased by Bernuth Agencies, Inc. ("Bernuth") for shipping activities and the Fisher Island Community *285 Association ("FICA") for parking facilities. FICA's lease commenced in 1996 and covers all of the property that is not leased to Bernuth.
Bernuth entered into its lease on April 9, 2001, for a two-year term, terminating on April 30, 2003. The lease granted Bernuth a right of first refusal, which can be exercised by Bernuth within seven days of receiving a proposed purchase agreement and must be accompanied by a deposit. Additionally, the lease gave Bernuth an option to purchase which could be exercised at any time during the term of the lease by submitting written notice, an executed purchase agreement, and a deposit.[1] The lease provided that both of these provisions could be exercised by Bernuth only if Bernuth is not in default of the lease as that term was defined in the lease.
On February 27, 2004, Terminal, which had been experiencing financial difficulties and was facing foreclosure actions, entered into a contract with Dade Marine Investments, Inc. ("Dade Marine") for the sale of Terminal Island.[2] This contract provided for a $15,000,000 purchase price and required closing to occur by May 15, 2004. Subsequently, Dade Marine assigned the contract to Barco on May 14, 2004.
On April 6, 2004, while the Dade Marine contract was still in effect, Terminal entered into another back-up contract to sell Terminal Island to Bernard Korman ("Korman"). This contract provided for a purchase price of $15,000,000 and a $250,000 deposit in escrow. Additionally, the contract specified that it was subject to the Silvers contract, the Dade Marine contract, and the Bernuth lease.
On April 20, 2004, Terminal notified Bernuth that the Silvers contract had been cancelled and tendered to Bernuth the Dade Marine contract and the Korman contract to allow Bernuth to exercise its right of first refusal within seven days. Bernuth did not exercise its right of first refusal. However, on May 14, 2004, the day Terminal and Barco were scheduled to close, Bernuth gave notice of its intent to exercise its separate option to purchase the property by tendering to Terminal a purchase agreement and a $1,500,000 deposit. Bernuth decided to exercise its option to purchase after reaching an agreement with Korman under which Korman would finance Bernuth's exercise of its purchase option and Bernuth would then sell the property to Korman, in exchange for favorable lease terms and another option to purchase. This agreement is referred to by the parties as the Bernuth-Korman agreement and will be discussed in more detail below.
As a result of Bernuth's exercise of its purchase option, Terminal submitted an identical letter to both Barco and Bernuth, indicating that Bernuth had exercised its purchase option, and that as a result, Terminal was unsure of its obligations under the Dade Marine contract and the Bernuth lease, but that Terminal would still close with whichever party could present a Settlement Agreement authorizing the closing and releasing Terminal from liability to the party with whom Terminal did not close. Barco filed suit the same day, seeking an *286 emergency order requiring Terminal to close, specific performance against Terminal for breach of contract, and a declaration as to which party (Bernuth, Korman, or Terminal) had superior ownership rights to the property. Barco also sought an emergency injunction prohibiting the property from being transferred or sold. The trial court held a hearing on the emergency injunction on May 18, 2004, and granted an injunction prohibiting Terminal from conveying Terminal Island to someone other than Barco or Bernuth.[3]
A flurry of counterclaims and cross-claims then followed. On May 21, 2004, Korman filed a counterclaim against Barco and a cross-claim against Terminal, seeking specific performance, a declaratory judgment, and an injunction.[4] Korman also filed a lis pendens on the property to preserve his rights under the Korman back-up contract. On May 24, 2004, Terminal assigned the Bernuth lease to Barco. This assignment contained an indemnification provision, discussed in more detail below. On June 3, 2004, Barco moved for an order permitting the sale of Terminal Island to Barco. After hearing argument, the trial court entered an order approving the sale, but warned the parties to the sale that they were proceeding at their own risk. Terminal and Barco then closed on the property. On June 14, 2004, Bernuth filed a counterclaim against Barco and cross-claims against Terminal and Korman, seeking specific performance and other relief. On July 7, 2004, Terminal, Bernuth, and Korman entered into a settlement stipulation, apparently unbeknownst to Barco, thereby settling the cross-claims between the parties. On July 9, 2004, Terminal filed a motion to dismiss Barco's claims against Terminal for injunctive relief and damages based on the fact that the closing between Terminal and Barco had occurred. This motion was granted on September 10, 2004, and the trial court allowed Barco ten days to file an amended complaint.
On September 17, 2004, Barco filed an amended complaint, which excluded the specific performance and declaratory counts that were previously dismissed, but stated tortious interference claims against Bernuth and Korman, as well as a breach of contract claim against Terminal. Korman moved to dismiss the tortious interference claim against him, and realleged his claims for a declaratory judgment and specific performance against Barco and Terminal. Bernuth also realleged its claim for specific performance. Bernuth subsequently amended its counterclaim to add a count for breach of contract. Terminal answered Barco's complaint, asserted affirmative defenses, and moved for judgment on the pleadings. On November 5, 2004, Bernuth moved for summary judgment on its claim for specific performance of its option, Barco's claim for tortious interference, and its breach of contract claim against Barco. Korman then moved for summary judgment on his claim for specific performance of his back-up contract with Terminal, and Barco's claim for tortious interference. On November 9, 2004, Barco also moved for summary judgment on Bernuth's claim for specific performance of Bernuth's option and Bernuth's claim for breach of contract. Hearings on the summary judgment motions were held on November 30, 2004, December 3, 2004, and February 24, 2005.
*287 On July 8, 2005, the trial court entered an order granting summary judgment in favor of Bernuth on Bernuth's counterclaim for specific performance and Barco's claim for tortious interference, and in favor of Korman on Barco's claim for tortious interference. On August 1, 2005, the trial court granted summary judgment in favor of Terminal on Barco's breach of contract claim. Barco appealed both of these orders.
With appeals pending, Barco filed a third amended complaint against Terminal for indemnification.[5] On May 5, 2006, Terminal moved for summary judgment on Barco's indemnification claim in the trial court. Before the trial court adjudicated this motion, on July 5, 2006, Barco moved for relief from the July 8, 2005 judgment on the basis of newly discovered evidence that Korman was not acting as trustee. The trial court denied this motion on October 24, 2006. Barco appealed this October 24, 2006 order. Ultimately, the trial court entered summary judgment in favor of Terminal on Barco's indemnification claim on November 7, 2006. Barco appealed this order as well.

I. Discovery
As a preliminary issue on appeal, Barco contends that the trial court erred in granting summary judgment while discovery was ongoing. Barco argues that summary judgment should not be granted until the parties have had an adequate opportunity to engage in discovery. Payne v. Cudjoe Gardens Prop. Owners Ass'n, 837 So.2d 458, 461 (Fla. 3d DCA 2002). Here, despite Barco's outstanding discovery requests, Barco had ample opportunity to engage in discovery.
Six months elapsed from the filing of the complaint, which sought emergency relief, and the first summary judgment hearings. Another three months elapsed between the first and the final summary judgment hearing. During this time, Barco actively sought discovery and, in fact, prevailed on motions to compel production of documents against Korman. Barco also propounded requests for production on Terminal in May 2004, but granted Terminal an extension until January 24, 2005 to produce the documents. Barco acknowledged during this time that it never sought to depose representatives of Terminal, despite the fact that an affidavit from a Terminal representative was filed in November. Barco, however, did depose Korman; Jordan Monocandilos, Bernuth's representative; and Bernuth's corporate counsel. Clearly, during this time, nothing prevented Barco from engaging in discovery.
By November 2004, all parties apparently believed the issues were ripe for resolution. In fact, Barco itself moved for summary judgment against Bernuth on Bernuth's specific performance and breach of contract claims. Thus, Barco conceded that summary judgment was proper as to those claims. Notably, Barco did not object to proceeding with summary judgment on the other claims. Three summary judgment hearings were held over the course of four months yet Barco never, either orally or in writing, requested a continuance of the summary judgment hearings nor did Barco seek leave to continue discovery, despite pending discovery motions which were not set for hearings until February 2005. A review of the *288 transcript shows that the only comment Barco made to the effect of needing more discovery during the first summary judgment hearing in November 2004 was that it would "want to have an opportunity to take [Terminal's representative's] deposition" to test the accuracy of Terminal's affidavit that Bernuth was not in default under the lease. Yet, Barco took no action to secure this opportunity until February 2, 2005, three months after first receiving Terminal's affidavit.
Specifically, on February 2, 2005, the trial court entertained Barco's second motion to compel production of documents against Korman, Korman's motions to abate discovery for a protective order, Bernuth's motion for a protective order, and Terminal's motion to abate discovery. Despite hearing argument on the merits of the motions, the trial court ultimately agreed that resolution of the issues on summary judgment, which was already pending, would moot at least some of the discovery disputes. Accordingly, the trial court decided to permit written discovery but granted a protective order as to the depositions of Korman and Bernuth's representatives. The trial court also granted Terminal's motion to abate discovery, based on Terminal's argument that resolution of the pending summary judgment motions would narrow the issues for which discovery was necessary.
On appeal, Barco contends that the February 2, 2005 stay foreclosed its opportunity to take discovery and that the trial court erroneously entered summary judgment with the stay in place. The transcript of the February 2, 2005 hearing indicates that at the time the stay was entered the issues before the trial court were clear, and the trial court was of the belief that the issues could be decided as a matter of law. The trial court also indicated that it anticipated entering an order very soon and that the order would be dispositive. Further, the "stay" was not nearly as prejudicial as Barco contends on appeal. The trial court permitted production of documents to continue and indicated that it was available to do an in camera inspection of any documents for which the discoverability was in dispute. Similarly, the trial court indicated that it would review the depositions that had already been taken to determine whether Barco was justified in seeking to depose Korman and Bernuth's representatives further. It is unclear whether Barco pursued either opportunity.
At the February 24, 2005 hearing, the trial court again stated its position that the issues before it could be decided as a matter of law. Bernuth, Korman, and Terminal all agreed with this assertion. However, Barco objected to the trial court's assessment that the issue presented was a question of law. The trial court then clarified Barco's position by asking whether "the only issue of fact that you contend exists with regard to this case at this point in time is whether or not Bernuth's alleged failure to either pay the additional monies for Berth Three or to have the insurance covered as required under the lease, and if those two facts are assumed, then they did not have the right to exercise the option under the lease." Barco agreed and added, "[a]nd then we also have the issue of the assignment to Korman." Barco also mentioned that it wanted discovery from Terminal regarding the "secret" settlement stipulation entered into by Terminal, Bernuth, and Korman.
We conclude, as did the trial court, that the issue of whether Bernuth was in default was properly resolved as a matter of law, and therefore discovery would not have unearthed any material facts necessary for the resolution of this issue. At no time during the hearings or in any of Barco's filings opposing summary *289 judgment was Barco able to demonstrate otherwise. "Summary judgment may be granted, even though discovery has not been completed, when the future discovery will not create a disputed issue of material fact." Estate of Herrera v. Berlo Indus., Inc., 840 So.2d 272, 273 (Fla. 3d DCA 2003). Further, "[a] trial court has the discretion to deny a continuance of a summary judgment hearing where the outstanding discovery items are immaterial to the dispositive issues in the case." Crespo v. Fla. Entm't Direct Support Org., 674 So.2d 154, 155 (Fla. 3d DCA 1996).
The only fact material to the default issue was whether Terminal had declared a default. Yet, there is no basis in the record upon which Barco could conclude that Terminal did declare a default. The affidavits from both Terminal and Bernuth, as well as independent documents, established unequivocally that a default was never declared. As such, there is no genuine issue of material fact as to whether Terminal declared a default and it is unlikely that further discovery on the issue would indicate otherwise. To the extent that Barco thought it would, Barco had ample time to notice Terminal's deposition, or to request production of documents earlier than the agreed upon extended deadline. Thus, because Barco had an adequate opportunity to engage in discovery and because any further discovery was not likely to present any material facts relevant to the trial court's disposition of the issues, summary judgment was not premature.

July 8, 2005 Order

II. Genuine Issues of Material Fact
The first order on appeal is the trial court's July 8, 2005 order. This order granted final summary judgment in favor of Bernuth on Bernuth's counterclaim for specific performance, in favor of Bernuth on Barco's claim of tortious interference, and in favor of Korman on Barco's claim of tortious interference.[6] Barco first challenges the July 8, 2005 order contending that the existence of genuine issues of material fact precluded the trial court from entering summary judgment. Specifically, Barco contends that there was an issue as to whether Korman was a trustee, whether Korman was a lender, and whether Bernuth was in default of the lease. We conclude that Korman's status as trustee was never in dispute, as Korman clearly testified during his deposition, taken the month prior to the first summary judgment hearing, that there was no actual trust for which he was a trustee. Although Korman was sued "as trustee and not individually and/or assigns" Korman's deposition made clear that he was not formally designated as trustee for the residents of Fisher Island or FICA. This was equally clear to the trial court as the trial court itself stated, during the February 2, 2005 hearing, its understanding that the title of trustee was a self-designation used by Korman to indicate that he was seeking to obtain this property for the benefit of Fisher Island residents and that it was irrelevant whether an actual trust existed. Thus, there was no genuine factual dispute about Korman's status as trustee.
Similarly, there was no disputed issue of fact as to whether Korman was a lender. The Bernuth-Korman agreement, which outlined how Korman would finance Bernuth's exercise of its purchase option and *290 Bernuth subsequently would convey the property to Korman, was disclosed to all parties and Korman was questioned about it at length during his ten-hour deposition. Again, the record clearly indicates that the trial judge understood the exact nature of the relationship between Bernuth and Korman, and that Korman was more than simply a third-party lender. Thus, no genuine issues of material fact existed that would preclude summary judgment on Barco's claim against Korman.
Additionally, there was no factual dispute over whether Bernuth was in default of the lease. The plain language of the lease required a declaration of default by the landlord (Terminal), with notice to the tenant and an opportunity to correct. The undisputed facts were that Terminal never declared a default, and Bernuth never received notice of default, as required by the terms of the lease. Thus, the trial court properly concluded as a matter of law that Bernuth was not in default. Because the record indicated no factual dispute about whether Terminal declared a default and Bernuth was entitled to judgment as a matter of law, summary judgment was proper.

III. Bernuth's counterclaim against Barco for specific performance
In addition to arguing summary judgment was barred by the existence of genuine issues of material fact, Barco contends on appeal that the trial court reached the wrong legal conclusions when adjudicating the motions for summary judgment. We review the trial court's order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). As a result of the June 2004 closing between Terminal and Barco, Barco came into possession of the Terminal Island property subject to the rights of the other parties involved in this litigation. Bernuth claimed that it was entitled to title and possession of the property because it exercised its purchase option. Thus, the determinative question was whether Bernuth had a purchase option to exercise and whether Bernuth properly exercised its purchase option. It is clear that the Bernuth lease granted Bernuth a purchase option. However, Barco contends that Bernuth's purchase option was essentially revoked while a third-party purchase agreement was pending, such that once a third-party purchase agreement was presented to Bernuth, Bernuth could only exercise its right of first refusal. Barco further contends that here, when Bernuth failed to exercise its right of first refusal by April 27, 2004, Bernuth's option to purchase was extinguished unless and until Barco's contract expired or was terminated.
The trial court rejected Barco's argument and concluded that the language of the lease clearly established that the right of first refusal and the option to purchase were separate and independent rights and set forth different time frames in which these rights could be exercised. Specifically, the lease provided: "[t]enant shall have the option to purchase the Property ("Purchase Option") and the right of first refusal ("First Right"). . . ." (emphasis added). The lease then discussed both the right of first refusal and the option to purchase in separate subsections, with the second subsection on the right of first refusal beginning, "[i]n addition to its Purchase Option right. . . ." The subsections then explained, respectively, that the right of first refusal could be exercised within seven days of receiving a proposed purchase agreement while the option to purchase could be exercised at any time during the term of the lease. Nowhere did the lease indicate or even imply that the *291 option to purchase is suspended while a third-party purchase contract is pending. Thus, based on the unambiguous language of the lease, the trial court found, and we agree, that the right of first refusal and the option to purchase were separate and legally distinct rights, such that the failure to exercise the right of first refusal does not extinguish the option to purchase. Where contractual provisions are clear and unambiguous, the court is bound by the plain meaning of those terms and has no discretion to re-write the agreement between the parties. See Pol v. Pol, 705 So.2d 51, 53 (Fla. 3d DCA 1997). The determination of whether a contract is unambiguous is a legal determination. Univ. of Miami v. Frank, 920 So.2d 81, 86 (Fla. 3d DCA 2006). We agree with the trial court's determination that the lease at issue is unambiguous.
Barco contends that, despite the language of the lease, the trial court's interpretation is incorrect because it renders certain provisions of the lease superfluous. Specifically, Barco points to section 26.2.2, which provided that:
[w]ithin seven (7) days after its receipt of the Third Party Agreement, Tenant shall notify Landlord in writing whether it wishes to purchase the Property on the terms and conditions set forth in the Purchase Agreement provided that the purchase price to be paid by Tenant shall be the purchase price set forth in the Third Party Agreement, whether that price is more or less than $15,000,000.00.
Barco contends that if the purchase option remains valid during the pendency of a third-party purchase agreement, the tenant will never pay more than $15,000,000, and this provision would be rendered superfluous. While Barco is correct that any logical tenant will never pay more than $15,000,000 for the property, that does not render the provision superfluous. Reading section 26.2 in its entirety, it is clear that section 26.2.2 is intended to explain the difference between the right of first refusal and the option to purchase, in that the option to purchase is an option to purchase for a specified price, while the right of first refusal requires the tenant to match the price a third party purchaser is willing to pay for the property. If a third-party purchaser is offering to purchase the property at a lower price than the option to purchase provides, it is more beneficial for the tenant to exercise the right of first refusal. If, however, a third-party purchaser is offering to purchase the property for a price higher than that offered in the purchase option, a rational tenant would presumably exercise the purchase option, not the right of first refusal. Simply because a tenant has the choice to exercise more than one right, and because a logical tenant will exercise one right over another as it benefits the tenant, does not render language superfluous. Since the tenant could still choose to exercise its right of first refusal, and pay more or less than the purchase price provided under the option to purchase, the trial court's interpretation of the language of the lease does not render any provisions superfluous. Because the trial court's interpretation of the lease provisions granting Bernuth a right of first refusal and a purchase option is compelled by the unambiguous language of the lease and does not render any provisions of the lease superfluous, we find no error and we need not address any of Barco's parol evidence.
Next, Barco contends that Bernuth's exercise of its purchase option was invalid because Bernuth was in default of the lease at the time it attempted to exercise its purchase option. The trial court concluded that, as a matter of law, Bernuth was not in default of the lease because the *292 lease terms indicated that a default only occurs once the landlord notifies the tenant of the default and the time to correct the default expires. As discussed at length above, it is undisputed that Bernuth never received notification of a default by Terminal. Additionally, Terminal submitted an affidavit affirming that it never declared Bernuth in default. Thus, under the terms of the lease, a default did not occur. We find no error in the trial court's conclusion that, as a matter of law, Bernuth was not in default of the lease because Terminal never declared a default.
Finally, Barco contends that the trial court should have considered that Bernuth was in breach of the lease, even though no default had been declared, and that the Bernuth-Korman agreement was, in substance, an assignment of Bernuth's purchase option before awarding Bernuth specific performance. Barco further argues that specific performance is an equitable remedy and unclean hands is a bar to specific performance.
"The decision whether to decree specific performance of a contract is a matter that lies within the sound judicial discretion of the trial court and it will not be disturbed on appeal unless it is clearly erroneous." Free v. Free, 936 So.2d 699, 702 (Fla. 5th DCA 2006). The trial court heard hours of argument on this case and was fully aware of Barco's contentions. Further, Terminal, as the landlord, had the discretion to waive any conditions of default by not declaring a default, and Terminal had the discretion to approve an assignment of Bernuth's purchase option. The trial court properly refrained from placing itself in the shoes of Terminal by deciding whether a default or undeclared default existed. The evidence simply does not support Barco's argument that it was wronged by Bernuth's exercise of its purchase option.

IV. Barco's claim for tortious interference against Bernuth
Barco also brought a claim against Bernuth for tortiously interfering with Barco's contract with Terminal for the purchase of the property by exercising its purchase option at, essentially, the eleventh hour. The trial court rejected this argument and concluded that because Bernuth had a contractual right to exercise its purchase option at any time during the term of the lease, the lawful exercise of the purchase option could not constitute interference as a matter of law. The trial court was entirely correct in this regard. As this Court recently stated, "no cause of action for intentional interference exists which is the consequence of a rightful action." Networkip, LLC v. Spread Enters., Inc., 922 So.2d 355, 358 (Fla. 3d DCA 2006) (citing Ethyl Corp. v. Balter, 386 So.2d 1220, 1222 (Fla. 3d DCA 1980)).
In Networkip, plaintiff had purchased PINs for prepaid phone cards. Networkip, 922 So.2d at 357. The provider then refused to honor the PINs because the retailer who had bought the PINs from the provider and resold them to the seller failed to pay the provider pursuant to the terms of the contract between the provider and the retailer. Id. Plaintiff then filed suit against the provider for tortious interference. Id. The trial court granted summary judgment in favor of plaintiff; however, this court reversed, concluding that because the contract between the retailer and the provider stated that it could be terminated if the retailer failed to pay the provider in full within a certain period of time, the provider was within its contractual rights to cancel the contract and, therefore, the cancellation did not constitute tortious interference. Id. at 358. Applying this rule to the case at bar, we conclude that because Bernuth had a contractual *293 right to exercise its purchase option at any time, the exercise of its purchase option cannot constitute tortious interference.

V. Barco's claim for tortious interference against Korman
Similar to Barco's claim for tortious interference against Bernuth, Barco claimed that Korman tortiously interfered with Barco's contract with Terminal by assisting Bernuth in exercising its purchase option. The trial court concluded that Korman was justified in his actions because he was acting to protect a valid business interest.
On appeal, Barco interprets the trial court order as finding that Korman's back-up contract constituted a valid business interest which justified Korman's interference. We disagree. Instead, we interpret the trial court order as finding that there were two ways in which Korman had a valid business interest. First, the trial court found that Korman's interference was justified because he was assisting Bernuth in exercising its purchase option, which Bernuth had a legal right to exercise. Second, it found that Korman had a valid business interest in obtaining the property through the Bernuth-Korman Agreement for the continued use of the Fisher Island residents. We agree with the trial court on this second ground.
On May 13, 2004, Bernuth and Korman entered into an agreement (the "Bernuth-Korman Agreement") whereby Korman loaned Bernuth the funds to put down the requisite $1,500,000 deposit to Terminal for the exercise of the purchase option. Bernuth was then to close with Terminal on the property and simultaneously convey the property to Korman, in exchange for favorable lease terms and a new option to purchase. The Bernuth-Korman Agreement also provided that Bernuth was to make every effort to have Terminal close with Korman directly, if permitted by Terminal consistent with the lease terms. However, the Bernuth-Korman Agreement specifically stated that the agreement was not an assignment. Although we recognize that the agreement was entered into in the late night hours before the Terminal-Barco closing was supposed to occur, we do not find support in the record for Barco's contention that the Bernuth-Korman Agreement was entered into for the sole purpose of interfering with the Terminal-Barco contract. Networkip, 922 So.2d at 358 ("A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage."). Instead, we conclude that the Bernuth-Korman Agreement was a means by which both Bernuth and Korman, regardless of whether as a trustee for the residents of Fisher Island who use the Terminal Island parking facilities or as an individual resident with an interest in preserving the right of Fisher Island residents to use the parking facilities, sought to preserve their interests in the property. "There can be no claim [for tortious interference with a business relationship] where the action complained of is undertaken to safeguard or promote one's financial or economic interest." Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683, 684 (Fla. 3d DCA 1986). Thus, because Korman had an interest in preserving the Fisher Island lease and because Korman entered into the Bernuth-Korman Agreement to further this interest, Barco has no cause of action against Korman for tortious inference.

August 1, 2005 Order

VI. Barco's claim for breach of contract against Terminal
Barco also appeals the trial court's August 1, 2005 order granting final *294 summary judgment[7] in favor of Terminal on Barco's claim against Terminal for breach of contract for failing to disclose the Korman back-up contract, selling Barco real property with significant title defects, and failing to close with Barco by May 15, 2004.[8]
Barco contends that summary judgment was improper because a genuine issue of material fact remained as to whether Bernuth's exercise of its purchase option was valid. As discussed above, the question of whether Bernuth's exercise of its purchase option was properly resolved by the trial court as a question of contract interpretation, is a matter of law. Thus, summary judgment adjudication was proper.
Additionally, we find that the trial court reached the correct legal conclusion on the issue. Barco's claim that Terminal failed to disclose the existence of the Korman back-up contract is without merit as the record indicates Barco had actual knowledge of the Korman back-up contract at the time Barco decided to close on the property. Similarly, by closing on the property despite this claim, Barco waived the issue. Likewise, Barco's claim that Terminal breached the contract by selling Barco property with title defects is completely without merit as Barco had actual knowledge that Bernuth had exercised its purchase option at the time Barco decided to close on the property and the trial court expressly indicated that if Barco chose to proceed with the closing, it would do so at its own risk, subject to the outcome of the pending litigation.
We also conclude that summary judgment was properly entered in favor of Terminal on Barco's claim that Terminal breached the contract by failing to close with Barco by May 15, 2004. Upon Bernuth's exercise of its purchase option, Terminal found itself faced with two parties with competing claims to the property. Not knowing which party had the better title to the property, Terminal was reasonable in its decision to postpone closing unless Barco could provide a waiver from Bernuth. Further, because Barco's contract for the purchase of the property was subject to Bernuth's rights under its lease, Terminal was legally justified in refusing to close with Barco because upon Bernuth's exercise of its purchase option, Bernuth's claim of title to the property was greater than that of Barco. Furthermore, this claim was waived by Barco when Barco closed with Terminal in June 2004. Thus, we affirm the August 1, 2005 order entering summary judgment in favor of Terminal.

*295 October 24, 2006 Order

VII. Barco's Motion for Relief from Judgment
Barco also appeals the trial court's October 24, 2006 order denying Barco's motion for relief from judgment on the basis of newly discovered evidence that Korman was not acting as a trustee for the residents of Fisher Island when he provided the funding for Bernuth to exercise its purchase option. Barco contends that the trial court was defrauded by Korman's representations that he was acting as trustee for the residents of Fisher Island and was seeking to preserve their lease interest in the Terminal property when he financed Bernuth's exercise of its purchase option. "Our standard of review of an order ruling on a motion for relief from judgment filed under Florida Rule of Civil Procedure 1.540(b) is whether there has been an abuse of the trial court's discretion." Snipes v. Chase Manhattan Mortgage Corp., 885 So.2d 899, 900 (Fla. 5th DCA 2004).
Contrary to Barco's contentions, the record is clear that there was no confusion as to Korman's status as a trustee. In Korman's deposition, taken one month prior to the first summary judgment hearing, Korman clearly testified there was no trust, he never signed documents to become a trustee, and that the term trustee was used only on the advice of counsel to indicate that he was seeking to obtain this property for the benefit of the residents of Fisher Island. Korman's testimony on this point was so clear the trial court acknowledged at the February 2, 2005 hearing that the trustee issue was irrelevant because Korman had self-designated himself as a trustee to indicate the intent behind why he sought to obtain this property. The trial court explicitly stated that there probably was no formal trust ever created and that the existence of a trust did not matter. Thus, there is no merit to Barco's contention that the trial court was defrauded into believing Korman was a trustee of a formal trust and there was no reason for the trial court to grant relief from judgment. Accordingly, the trial court did not abuse its discretion in denying Korman's motion for relief from judgment.

November 7, 2006 Order

VIII. Barco's indemnification claim against Terminal
Lastly, Barco appeals the trial court's November 7, 2006 order granting final summary judgment in favor of Terminal on Barco's claim against Terminal for indemnification. As a preliminary matter, we reject Barco's contention that the need for additional discovery on this issue made summary judgment inappropriate. Barco was allowed the opportunity to depose Terminal's representative regarding this issue, with specific instructions from the trial court not to delve into the breach of contract issue. Barco exceeded the permitted scope of the deposition and the trial court correctly entered a protective order in Terminal's favor. We find no error in this regard and no merit to the remainder of Barco's contentions that ongoing discovery would have produced relevant information.
In Barco's third amended complaint, Barco sought indemnification by Terminal for Bernuth's claim against Barco for specific performance for Barco's failure to convey the property to Bernuth after Barco took possession of the property. However, the plain language of the indemnification provision under which Barco sought indemnification does not cover this claim. The Assignment of Leases, Rents and Security Deposits, executed by Terminal and Barco at the closing contained an indemnification provision which stated as follows:

*296 Assignor hereby indemnifies and agrees to hold harmless Assignee from and against any and all liabilities, claims, demands, obligations, assessments, losses, costs, damages and expenses of any nature whatsoever (including without limited [sic] the generality of the foregoing, reasonable attorney's fees and court costs) which Assignee may incur, sustain or suffer, or which may be asserted or charged against Assignee, arising out of, pertaining to or in any way connected with Assignor's obligations, duties and liabilities under the Leases arising, on or prior to the date hereof.
Thus, the indemnification provision covers only claims arising from the obligations, duties and liabilities of Terminal, the Assignor. Because the claim for which Barco seeks indemnification arises not from Terminal's obligations but from Barco's own obligation which arose post-closing, it is not covered by the indemnification provision. Thus, the November 7, 2005 order granting summary judgment in favor of Terminal on Barco's claim for indemnification must be affirmed.
Because we find no error in any of the four trial court orders on appeal, we affirm.
WELLS, Judge (specially concurring).
While I agree with, and concur entirely in, Judge Cortiñas' opinion, I write separately to make clear and re-emphasize that orders granting summary judgment, such as the July 8, 2005 and the August 1, 2005 orders referenced in the opinion, are not appealable orders, but are orders that must, as noted, be reduced to judgment before appeal. See Fla. R.App. P. 9.130(a)(3) (limiting appeals to district courts of appeal to enumerated non-final orders); Wahl v. Taylor, 926 So.2d 488, 489 (Fla. 2d DCA 2006) (stating that "an order merely granting a motion for summary judgment is not a final order because it does not enter judgment for or against a party"); Lidsky Vaccaro & Montes, P.A. v. Morejon, 813 So.2d 146, 150 (Fla. 3d DCA 2002) (holding that "the law is settled that an order which merely grants a motion for summary judgment and does not otherwise contain the traditional words of finality is not a final order subject to appellate review," and that "[a]n order granting only summary judgment merely establishes an entitlement to a judgment, but is not itself a judgment").
GREEN, J. (concurs).
NOTES
[1] The amount of the deposit required is set forth in the Purchase Agreement attached as Exhibit C to the lease.
[2] This contract acknowledged that it was subject to the Bernuth lease and was actually entered into as a back-up contract to a separate purchase contract with another buyer, James Silvers, whose contract was contingent upon approval for zoning changes. The Silvers contract was terminated on April 19, 2004, at which time the purchase contract with Dade Marine became the primary contract for the sale of the property.
[3] The trial court later amended this injunction to prohibit Terminal from conveying Terminal Island to anyone.
[4] After Barco closed on the property, Korman filed an amended counterclaim, realleging the previous allegations and adding a claim against Barco for specific performance.
[5] The trial court did not permit Barco to allege fraudulent inducement and conspiracy against Terminal as Barco originally sought in its motion for leave to file a second amended complaint on August 18, 2005. The trial court indicated that it would permit an indemnification claim against Terminal. Thus, Barco filed a motion for leave to file a third amended complaint asserting the indemnification claim.
[6] This order was originally entered as a non-final order. However, on November 10, 2005, this Court temporarily relinquished jurisdiction for a period of twenty days to allow the trial court to enter a final order. A final order, incorporating the July 8, 2005 and August 1, 2005 orders was entered on November 30, 2005, and then subsequently amended on December 20, 2005.
[7] This order was originally entered as a non-final order. However, on November 10, 2005, this Court also temporarily relinquished jurisdiction for a period of twenty days to allow the trial court to enter a final order. A final order, incorporating the July 8, 2005 and August 1, 2005 orders, was entered on November 30, 2005, and then subsequently amended on December 20, 2005.
[8] Barco argues the trial court improperly converted Terminal's motion for judgment on the pleadings to a motion for summary judgment. We disagree. The trial court has the authority to sua sponte treat a motion for judgment on the pleadings as a motion for summary judgment so long as the trial court affords the parties an adequate opportunity to submit affidavits and other evidentiary matters. Jaramillo v. Dubow, 588 So.2d 677, 678 (Fla. 3d DCA 1991). Although the trial court here did not treat the motion as a motion for summary judgment until after the court had heard argument on the issue, given the litigation between the parties, and the fact that other issues in the case were the subject of summary judgment motions, the parties had ample opportunity to submit evidence on this issue, especially where the issue was a question of law.