# Third District Court of Appeal

## State of Florida

Opinion filed May 8, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2209
Lower Tribunal No. F18-10386B

_____

**The Justice Administrative Commission,**
Petitioner,

vs.

**Khurrum Wahid, Esq.,**
Respondent.


An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Ana Cristina Martinez, General Counsel, and Christian D. Lake, Assistant General Counsel (Tallahassee), for appellant.

Wahid Vizcaino Geller, PLLC, and Khurrum B. Wahid, and Alyssa Espinosa, for appellee.


Before FERNANDEZ, GORDO and LOBREE, JJ.

FERNANDEZ, J.

Petitioner, the Justice Administrative Commission ("JAC"), seeks certiorari review of the trial court's November 16, 2023 Order Approving Payment of Attorney's Fees, Costs, and/or Related Expenses. The order required the JAC to pay respondent, Khurrun Wahid, Esq. ("Mr. Wahid"), attorney's fees as court-appointed counsel for an indigent defendant in a criminal case in an amount that Mr. Wahid requested, which was more than what the JAC Registry Contract required. We grant the petition and quash the order because the trial court departed from the essential requirements of law in finding the JAC Registry Contract unenforceable and awarding fees of $100 per hour to Mr. Wahid, rather than $75 per hour in this non-capital case.

## FACTS AND PROCEDURAL HISTORY

The State of Florida charged the defendant in the underlying case in January 2020 with first-degree murder, attempted first-degree murder with a deadly weapon, and possession of a firearm by a convicted felon. The trial court appointed Mr. Wahid on February 7, 2020 to represent the defendant as court-appointed private conflict counsel after the Office of the Public Defender and the Office of the Regional Conflict Counsel withdrew.

The case was resolved to a plea of guilty to one count of possession of a weapon by a convicted felon. Defendant was sentenced on January 17,

2023. Thereafter, Mr. Wahid submitted an hourly billing to the JAC seeking $100 per hour for 435.3 hours of work ($43,530.00). On May 30, 2023, the JAC responded with a Letter of Objection stating that Mr. Wahid had sought compensation at an hourly rate of $100 per hour for a capital case instead of the hourly rate of $75 per hour for a non-capital case. The JAC's letter stated, in part:

> The indictment here was entered on or about January 21, 2020. Since early 2016, in order to seek the death penalty, the state must file a notice of intent to seek death:
>
>> If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors that the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.
>
> § 782.04(1)(b), Fla. Stat. The state did not file a notice of intent to seek death in this matter. As such, the defendant was never subject to a sentence of death in this matter during the pendency [of] your representation.

In addition, the JAC requested to participate in the hearing on Mr. Wahid's motion for fees.

On November 9, 2023, Mr. Wahid filed a motion for attorney's fees, again requesting the $100 per hour rate. In support of his position, Mr. Wahid argued the following in paragraph 4 of his motion:

3

Rate: This case was billed at $100 per hour because the State sought the death penalty. Though a notice of death was never filed, [the State] stated several times, on the record, that [it has] not waived death. As such, the Court ordered a stenographer for each appearance, which is only done when death is sought. Further, the initial Judge assigned was not death qualified, so the case was handled by a death qualified Judge for most of the three years until the original Judge became death qualified. On September 23, 2021, the undersigned filed a motion to "deem a waiver of the death penalty" had taken place due to the State's failure to file the notice in a timely manner. This motion was denied by the Court in late October 2021. Therefore, death was still a viable option for the State even as late as November 2021.

Mr. Wahid argued that the rate provision in the contract was unfair and thus unenforceable because it was unconscionable.

On November 13, 2023, the JAC responded and contended that under section 27.5304(12), Florida Statutes (2023), and the express terms of the JAC Registry Contract executed by Mr. Wahid, the rate was statutorily and contractually limited to $75 per hour because the State did not file a notice of intent to seek the death penalty. The JAC submitted that capital cases were specifically defined in the Registry Contract that Mr. Wahid executed. Paragraph III(13) of the JAC Registry Contract provided the following:

> If Attorney intends to seek compensation in excess of the flat fee set forth in the General Appropriations Act, Attorney agrees not to seek compensation at an hourly rate in excess of the hourly rates set forth in s. 27.5304(12), F.S. For purposes of hourly billing, a capital (death) case is any offense for which the potential sentence is death, the State has filed a notice containing a list of the aggravating factors the State intends to

4

prove, the State has not waived seeking the death penalty at the time the Attorney is appointed to represent the Defendant, and the Attorney is eligible and qualified to accept appointment to death penalty cases. If Attorney is not on the registry for death penalty cases, the appointment shall be deemed as a capital (non-death) appointment unless the order of appointment specifically indicates that Attorney is qualified to accept appointment to death penalty cases.

Thus, the JAC's position was that its JAC Registry Contract clearly and unambiguously defined a capital death case as one requiring the State to file a notice of intent to seek death.

On November 16, 2023, the trial court held a hearing on Mr. Wahid's motion for fees. At the fee hearing, the parties agreed there was no dispute as to the facts, including: 1) it was not clear whether the State would be seeking the death penalty in this matter; 2) the State did not file a notice of intent to seek the death penalty under section 782.04(1)(b), Florida Statutes (2023); 3) Mr. Wahid filed a motion to preclude the death penalty, which the trial court denied because the defendant had not been arraigned on the indictment; 4) the trial court eventually held an arraignment; 5) the State never filed a notice of intent to seek the death penalty within the 45-day deadline required by section 782.04(1)(b); and 6) the case was resolved to defendant pleading guilty to one count of possession of a weapon by a convicted felon and the defendant was sentenced on January 17, 2023.

5

Mr. Wahid contended at the hearing that every time the parties were in court, there had to be a stenographer, as per the Florida Supreme Court's "Best Practices" rule that "[s]tenography alone should be used for capital cases" <u>See</u> Florida Supreme Court Administrative Order AOSC10-1. He alleged that the trial court judge, to whom the case was assigned, could not continue on the case because she was not yet death-qualified. Thus, the case was transferred to a new judge who was death-qualified. Mr. Wahid stated the prosecutors never gave him the aggravators he had asked for. He asked one of the prosecutors if the State was seeking death, and the prosecutor told Mr. Wahid the State was not sure yet what it was doing with the case.

Mr. Wahid argued that the defendant was never arraigned on the indictment, so he filed a motion with the court to have his client deemed arraigned for purposes of the 45-day notice. The trial court denied the motion, so Mr. Wahid arraigned his client the same day. He argued the 45 days then ran without the State ever filing the notice of death. He contended that since the State verbally told him the case was still traveling as a death case, that this was a form of notice. He argued that the case of <u>Justice Administrative Commission v. Salantrie</u>, 4D20-206 (Fla. 4th DCA Apr. 20, 2020), an

6

unpublished order cited by the JAC, was distinguishable. That order reads in its entirety as follows:

> ORDERED that petitioner's January 24, 2020 amended petition for writ of certiorari is granted. See Still v. Justice Admin. Com'n, 82 So. 3d 1168, 1170 (Fla. 4th DCA 2012) (holding that certiorari lies to compel reconsideration of compensation awarded to counsel under section 27.5304(12), Florida Statutes). The circuit court's order departs from the essential requirements of law because counsel is limited to an hourly rate of $75.00 as the state did not file a notice of intent to seek the death penalty **and did not take any action to suggest that it would.** See Justice Admin. Com'n v. Lenamon, 19 So. 3d 1158, 1165 (Fla. 2d DCA 2009) (holding that the circuit court's order departed from the essential requirements of law by approving compensation for counsel at an hourly rate that exceeded the maximum hourly rate established by law). DAMOORGIAN, CIKLIN and CONNER, JJ., concur.

(emphasis added). Mr. Wahid argued that the Court in Salantrie held that it was a departure from the essential requirements of law to provide the higher rate of $100 per hour because the State did not file a notice of intent to seek the death penalty. However, Mr. Wahid contended that unlike in Mr. Wahid's circumstances, the Salantrie Court added the language in the order regarding the State not having taken any action to suggest that it would seek the death penalty.

In response, the JAC contended that regardless of whether Mr. Wahid felt there was substantive unconscionability, his argument was still meritless because there had to be both procedural and substantive unconscionability

7

for a contract to be unconscionable. Here, the JAC Registry Contract specifically provided the State had to file a death penalty notice, not give oral notice. And the notice had to have the list of aggravating factors that the State intended to prove, consistent with section 784.04(1)(b), Florida Statutes (2023). The JAC contended the notice had to be filed with the court within 45 days of the defendant's arraignment, which never happened in this case. The JAC cited to Salantrie in support of its position that the $100 per hour rate was limited to capital cases when the State filed its notice of intent.

The trial court agreed with Mr. Wahid and found that the applicable hourly rate was $100 per hour. The trial court stated:

> And the language I'm focusing on, and did not take any action to suggest that it would. And given the undisputed facts at this point, it sounds like the State was saying that they [sic] would, I'm still considering it -- about it. Mr. Wahid is looking into convincing them to waive it.
> So, I think equitably Mr. Wahid is entitled to it. And under the case of JAC versus Salantrie, out of the Fourth DCA, April 2020, the Fourth is also acknowledging that that condition can be met if the State takes action to suggesting that it will seek the death penalty.

Thus, the trial court granted Mr. Wahid's motion and awarded him $43,530.00 (6.8 hours in court and 428.5 hours out of court at a rate of $100 per hour), instead of the $32,647.50 the JAC argued was appropriate (the same amount of total hours at $75 per hour). The JAC now petitions this Court for a writ of certiorari.

8

## DISCUSSION

A petition for writ of certiorari is the proper vehicle for reviewing an order concerning attorney's fees for private court-appointed counsel. Sheppard & White, P.A. v. City of Jacksonville, 827 So. 2d 925, 928 n.3 (Fla. 2002). The standard of review in certiorari proceedings is whether the trial court departed from the essential requirements of law. Id.

The JAC asserts that the trial court departed from the essential requirements of law when it found the JAC Registry Contract unenforceable and determined that the case was a capital case for purposes of attorney's fee billing pursuant to Florida law and the JAC Registry Contract. The trial court thus erroneously awarded Mr. Wahid the $100 per hour fee he requested in his motion. Mr. Wahid answers that the circumstances of this case created an unconscionable contract; therefore, he is due the higher $100 per hour attorney fee rate as an equitable remedy.

The JAC Registry Contract executed by Mr. Wahid outlines when a case can be billed at the $100 per hour capital case rate. In cases involving extraordinary and unusual efforts, a capital case is compensated at a statutory rate not to exceed $100 per hour, and a non-capital case is compensated at a statutory rate not to exceed $75 per hour. See § 27.5304(12)(d), Fla. Stat. (2023). As previously noted, Paragraph III(13) of

9

the JAC Registry Contract lists four requirements that must be met for an attorney to qualify billing at the higher capital rate: 1) the potential sentence is death; 2) the State has filed a notice of intent to seek death containing a list of the aggravating factors the State intends to prove as required by section 782.04, Florida Statutes (2023); 3) the State has not waived seeking the death penalty at the time the attorney is appointed to represent the defendant; and 4) the attorney is eligible and qualified to accept appointment to death penalty cases.

In addition, section 782.04(1)(b), Florida Statutes (2023), requires that the State file a notice of intent before it can seek the death penalty and provides as follows:

> If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

In the case Mr. Wahid was working on in the trial court, the State never filed a notice of intent to seek the death penalty. Thus, it never gave the required notice under section 782.04(1)(b). Mr. Wahid contends that the State **could** seek the death penalty. However, it is undisputed that the State did not comply with section 782.04(1)(b); accordingly, it could not seek the death penalty.

Consequently, the case Mr. Wahid was working on was not a capital case for purposes of billing under the terms of section 27.5304(12)(d) and Paragraph III(13) of the JAC Registry Contract.

Moreover, Mr. Wahid is bound by the terms of the contract he executed with the JAC. Pursuant to sections 27.40(3) and (5), Florida Statutes (2023), the JAC contracts with private court-appointed counsel selected for inclusion on a circuit's court-appointed registry by the chief judge. According to section 27.40(3)(a), Florida Statutes (2023), when applying to participate in a court-appointed registry, the attorney must certify that he or she:

> 1.     Meets any minimum requirements established by the chief judge and by general law for court appointment;
> 2.     Is available to represent indigent defendants in cases requiring court appointment of private counsel; and
> 3.     Is willing to abide by the terms of the contract for services, s. 27.5304, and this section.

Here, Mr. Wahid is bound by the terms of the contract he voluntarily executed. "A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." Brooks v. Green, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (citations omitted). See also Barco Holdings, LLC v. Terminal Inv. Corp., 967 So. 2d 281, 291 (Fla. 3d DCA 2007).

Mr. Wahid contends that the JAC Registry Contract is unenforceable because it is unconscionable. The JAC concedes that the JAC Registry Contract is a contract of adhesion. An adhesion contract is defined as a

11

"standardized contract form offered to consumers for goods and services on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999) (quoting Blacks Law Dictionary, 6th Ed. (1990). However, the JAC submits that even a contract of adhesion is an enforceable contract.

To invalidate a contract under Florida law and find that it is unconscionable, a court must find that the contract is both procedurally and substantively unconscionable. Murphy v. Courtesy Ford, L.L.C., 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." Powertel, 743 So. 2d at 574. "[S]ubstantive unconscionability deals with the unreasonableness and unfairness of the contractual terms themselves." Romano ex rel. Romano v. Manor Care, Inc., 861 So. 2d 59, 62 (Fla. 4th DCA 2003).

The existence of a contract of adhesion does not automatically establish procedural unconscionability. Kendall Imps., LLC v. Diaz, 215 So.

3d 95, 109-10 (Fla. 3d DCA 2017). This Court stated in <u>Kendall Imports, LLC</u> that the court must look at the circumstances surrounding the execution of the contract including, among others, whether the offeree was rushed or precluded from inquiring into the terms of the contract. <u>Id.</u>

The circumstances here do not indicate that there was any procedural unconscionability. Mr. Wahid is a death penalty-qualified attorney. Because he is an experienced death-qualified attorney, he was familiar with the terms of the JAC Registry Contract, and he was bound by its terms. If an attorney does not want to accept the terms of the JAC Registry Contract, then the attorney can decline to participate in the registry, as there is no right to receive court appointments. In this case, Mr. Wahid certified he was willing to abide by the terms of the contract when he applied to be included in the court-appointed registry, under section 27.40(3)(a)3., Florida Statutes (2023). Thus, he was bound by the contract's terms. <u>Allied Van Lines, Inc. v. Bratton</u>, 351 So. 2d 344, 347 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract.").

Regarding substantive unconscionability, we do not find that it was present in the JAC Registry Contract. The JAC is the entity that administers payments to court-appointed counsel. As previously discussed, the term "capital case" is defined in the JAC Registry Contract.

13

It is consistent with sections 27.5304(5)(d), 27.5304(12)(d), and 782.04(1)(b), Florida Statutes (2023). Thus, the trial court was required to enforce that provision of the contract. Justice Admin. Comm'n v. King, 988 So. 2d 160, 161 (Fla. 4th DCA 2008) ("This construction [of section 27.5304, Florida Statutes] is consistent with the construction of the statute put forward by the JAC, the agency charged with its interpretation and enforcement.").

Mr. Wahid argues that he was required to treat the case as a capital case so that he could fulfill his ethical responsibilities to the defendant he was representing. However, the court docket does not show that Mr. Wahid requested the additional services available for a capital death case representation. For example, as the JAC submits, Mr. Wahid did not file a motion seeking the appointment of co-counsel under Florida Rule of Criminal Procedure 3.112. He did not file motions for due process costs related to capital death cases such as a motion for a mitigation specialist and mental health experts. The JAC contends that these additional due process services and state-funded co-counsel are available in capital death cases. We agree with the JAC that making use of every possible support and defense is considered to be in the client's best interest, especially since funding requests can be made *ex parte* under Andrews v. State, 243 So. 3d 899, 902 (Fla. 2018).

Moreover, the first time the issue of death appears in the underlying docket was when Mr. Wahid filed a motion seeking a declaration of the State's failure to timely file notice of intent to seek death. Mr. Wahid alleged:

> Mr. Plasencia appears to never have been formally arraigned on the indictment. Undersigned has since conducted substantial work on behalf of Mr. Plasencia including a broad investigation of facts and civilian witnesses, the taking of a dozen witness depositions from appointment through this date, and development of a trial strategy predicated upon a non-death penalty trial. There have been numerous discussions with the Assistant State Attorney Ms. Rascoe during this time. No discussions regarding this case being a death penalty case were raised. No second chair has ever been appointed on this matter and no mitigation expert. At the last court appearance, the Court indicated she could not hear the matter as it was a death penalty case. The matter was referred to Judge De La O for status. At this time undersigned counsel asked the Assistant State Attorney if this case was still being considered for notice of intent to seek death and she responded it still needs to go before the committee thus raising the possibility that a notice of intent to seek death was still an option for the State of Florida.

(emphasis added). Accordingly, as of the date Mr. Wahid filed this motion, September 23, 2021, he stated he had not prepared the case as if it was a capital case.

Lastly, Mr. Wahid contends the JAC Registry Contract is unconscionable because it would require him to notify the State that the defendant had not been arraigned on the indictment, and thus, there would be a conflict with Mr. Wahid's financial interest. According to section 27.5304, Florida Statutes (2023), compensation is paid to court-appointed attorneys mainly on a flat fee

15

basis. The fees are based on the highest charge filed by the State Attorney on any given case. Consequently, it is possible that the court-appointed attorney's ethical duty to a client conflicts with the attorney's personal interest in obtaining compensation. Under the example given by the JAC in support of its petition, a court-appointed attorney who is appointed before formal charges are filed against a defendant may ethically have to advocate on behalf of the client to convince the State Attorney's office to file lesser charges in a case even though this may have the effect of reducing the attorney's flat fee compensation. But as the JAC correctly contends, at the end of the day, a court-appointed attorney's ethical obligation to his client must outweigh any interest the attorney has in the amount the attorney is to be compensated. Thus, because there is neither procedural nor substantive unconscionability here, Mr. Wahid is bound by the terms of the contract he voluntarily entered.

In support of its position that the JAC Registry Contract provision has been addressed by an appellate court in Florida, the JAC cites to the Fourth District Court of Appeal's order in Salantrie, 4D20-206 (Fla. 4th DCA Apr. 20, 2020). In Salantrie, the attorney was awarded $100 per hour, although the State never filed a notice of intent to seek the death penalty. The JAC filed a petition for writ of certiorari with the Fourth District Court of Appeal, and the Court entered its order granting the JAC's petition. The Court found that

16

the trial court's order departed from the essential requirements of law because "counsel [was] limited to an hourly rate of $75.00 as the state did not file a notice of intent to seek the death penalty **and did not take any action to suggest that it would**." Id. (emphasis added).

As the JAC correctly states, although the Salantrie order is an unpublished order, it constitutes appellate guidance on this issue because there are no other appellate decisions in the state on this issue. Sims v. State, 998 So. 2d 494, 498 (Fla. 2008). Furthermore, the phrase "and did not take any action to suggest that it would," that Mr. Wahid focuses on in support of his position, could very well have referred to the filing of the notice of intent to seek the death penalty, or the filing of aggravators. Thus, we find that the Fourth District Court of Appeal's use of this phrase in the opinion is surplusage and was unnecessary to its decision as reflected in its order.

## CONCLUSION

The JAC Registry Contract was an enforceable contract. The trial court departed from the essential requirements of law by finding it was unenforceable and authorizing the higher attorney fee rate applicable only in capital cases to this non-capital case as defined pursuant to the terms of section 27.5304(12)(d), Florida Statutes (2023), and the JAC Registry Contract. The filing of a notice of intent to seek death pursuant to section

17

782.04(1)(b), Florida Statutes (2023), by the State is a condition precedent to determining if a case qualifies for the $100 per hour billing rate for capital cases under section 27.5304(12)(d). Here, the State never filed this notice, thus, this was not a capital case for billing purposes. Mr. Wahid voluntarily chose to participate in the court-appointed registry and voluntarily executed the JAC Registry Contract.

Accordingly, we grant the JAC's petition for writ of certiorari and quash the order on review. We remand the case for the trial court to enter an amended order awarding Mr. Wahid's fees at the rate of $75 per hour, which would be $32,647.50 for the number of hours he worked on the case.

Petition granted, order quashed, case remanded with instructions.